**Lorenzo Darnell WASHINGTON,**
**Appellant**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 01–11–00692–CR, 01–11–00693–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

June 28, 2012.

Thomas J. Lewis, for Lorenzo Darnell Washington.

Alan Curry, Honorable Mike Anderson, Jessica Akins, for The State of Texas.

Panel consists of Chief Justice RADACK and Justices JENNINGS and KEYES.

## ORDER

TERRY JENNINGS, Justice.

Appellant, Lorenzo Darnell Washington, pleaded guilty to two separate offenses of aggravated sexual assault,[1] and the trial court assessed his punishment at confinement for 40 years for each offense with the sentences to run concurrently. In his sole issue, appellant contends that the trial court erred in entering an order denying his request for an evidentiary hearing on his motion for new trial.

We reverse the order of the trial court.

### Background

Appellant, while represented by counsel, pleaded guilty to committing the offenses of aggravated sexual assault against the first complainant on July 13, 2008[2] and the second complainant on May 19, 2006.[3] In his plea papers for the aggravated sexual assault against the first complainant, appellant admitted that he had intentionally and knowingly caused the penetration of her sexual organ by placing his sexual organ in her sexual organ without her consent, compelled her to submit by the use of physical force and violence, and placed her in fear of imminent death and kidnapping. In his plea papers for the aggravated sexual assault committed against the second complainant, appellant admitted that he had intentionally and knowingly caused the penetration of her sexual organ by placing his sexual organ in her sexual organ without her consent, com-

pelled her to submit by the use of physical force and violence, and placed her in fear of imminent death. In written plea agreements concerning both offenses, appellant acknowledged that he was entering his pleas "without an agreed recommendation," there would be a pre-sentence investigation ("PSI") report, and his punishment would be "limited to" confinement for 40 years. Appellant's attorney signed the agreements, affirming that he believed that appellant had executed the pleas knowingly and voluntarily and after a full discussion of the consequences. Appellant's attorney also affirmed that he believed that appellant was competent to stand trial.

The trial court signed the plea agreements in both cases, stating that it had admonished appellant of the consequences of his pleas and had ascertained that appellant entered his pleas "knowingly and voluntarily and after discussing the case(s) with his attorney." The trial court also recited in the plea paperwork that appellant appeared "mentally competent," appellant's pleas were "free and voluntary," and appellant's attorney was "competent" and had "effectively represented" appellant. Additionally, the trial court, in both cases, provided appellant with written admonishments, which were signed by appellant and provided, among other things, that appellant was pleading guilty to the offenses of aggravated sexual assault, the punishment range for the offenses was "25 years to life," and the State and appellant had "agreed to a 40 year cap." In signing these admonishments, appellant represented that he was mentally competent, understood the allegations and the nature of the proceedings, was freely and voluntarily

---

1. *See* TEX. PENAL CODE ANN. § 22.021 (Vernon 2011).

2. Trial court cause number 1177840; appellate cause number 01–11–00692–CR.

3. Trial court cause number 1204237; appellate cause number 01–11–00693–CR.

pleading guilty, had read and understood the admonishments, and had consulted his attorney.

A PSI report was prepared prior to appellant's sentencing. The report recites the facts of both offenses, sets forth appellant's "written statement" and the first complainant's victim-impact statement, recites appellant's prior criminal record and drug use, and describes appellant's family, education, and employment history. The report contains appellant's statements, made during a personal interview, that he wanted to take his cases to trial, he was not mentally stable when he entered his guilty pleas, and he had had "consensual sex" with the second complainant. The report also contains information that appellant had noted that he had been diagnosed "with bi-polar [disorder] and schizophrenia in 2008 or 2009," jail records listed "bipolar disorder as his diagnosis," "his skull [had been] fractured in 2009 when he was hit in the head" while in custody, and he had "quit taking psychotropic medications after he pled to his PSI because they interfered with his ability to think clearly." [4]

The trial court conducted a sentencing hearing at which it noted that it had reviewed the PSI report. Appellant's counsel also represented during the hearing that "we've reviewed the report," and counsel stated that he had "no corrections or objections." During closing arguments on punishment, appellant's counsel asked the trial court to consider the fact that appellant "has problems," and he asked that appellant be provided "some help in

jail" for "rehabilitation." The trial court entered its judgments in both cases on August 4, 2011, finding appellant guilty and imposing a sentence of confinement for 40 years in each case, to run concurrently.

On September 2, 2011, appellant filed a new-trial motion in both cases, asserting that his pleas were "not freely and voluntarily made" on the grounds that he received "ineffective assistance," he suffered from "mental illness," and there was a breach of an "agreement on sentencing." In support of his ineffective-assistance claim, appellant asserted that his trial counsel had incorrectly advised him about "the results of DNA testing performed prior to his guilty plea," he had pleaded guilty "in reliance on the erroneous information provided" by his trial counsel, and he would not have entered a guilty plea if he had been advised correctly.[5] In support of his mental-illness claim, appellant asserted that he had been diagnosed "as suffering from schizophrenia, bipolar disorder, and brain trauma"; he suffered from "blackouts and cognitive disorder"; and his trial counsel "failed to investigate [his] mental health history," "raise the issue of [his] sanity and competency to stand trial," or "present evidence of mental illness as mitigation at his sentencing hearing." In support of his "sentencing" claim, appellant asserted that his trial counsel had advised him that the State had agreed to a sentencing range of "15 to 40 years" but that, contrary to this information, he was later admonished that the trial court would consider a sentence between 25 and 40 years.

4. The PSI report was not included in the original clerk's or reporter's record, but both parties refer to the report in their briefing, and the State submitted the report to this Court as part of a supplemental record. *See* Tex.R.App. P. 34.6(e)(1). The State represents that both parties have agreed that "the PSI

[report] should be part of the appellate record, [because it] was treated as such by the parties during punishment."

5. Neither appellant's motion nor his supporting affidavit distinguishes between either separate offense.

Appellant attached to his new-trial motion an affidavit, in which he testified, in pertinent part,

My wife paid for some DNA testing at a[n] Independent DNA Lab. [My trial counsel] took care of everything himself. When the results came in, he told me that the DNA didn't say that I was the person that committed the crime. I was being told this for about a year, then on the day that I was set to go to trial he told me that the DNA did match me. I was given false information about the most important/the only evidence in my case. If I would have known the truth about the DNA results, I would have not pled guilty. I would have been able to get things investigated and I would have been able to discover the truth about everything. [My trial counsel's] mistake prevented me from being able to defend myself. . . .

Additionally, in regard to his competency, appellant testified that he is a "mental health patient," having been diagnosed with "bi-polar and schizophrenic disorders," he suffered a "serious head injury" during an aggravated assault while incarcerated, his skull was fractured, he had been hospitalized multiple times and suffered from blackouts and memory losses, and he was "not fit to make complex or serious decisions without being given special attention or being given excessive details in advance."

The trial court wrote a note on appellant's new-trial motion stating, "no hearing granted. Allow to overrule by op[eration] of law."

### Hearing on New–Trial Motion

In his sole issue, appellant argues that the trial court erred in denying his request for an evidentiary hearing on his new-trial motion because "as a result of ineffective assistance of counsel [his] plea[s] of guilty [were] not freely and voluntarily made" and his trial counsel "failed to investigate and offer evidence of [his] history of mental illness." Appellant asserts that his affidavit demonstrates "two areas in which [his] trial counsel's representation fell below an objective standard of reasonableness": (1) "voluntariness of [his] plea[s] and (2) "mental health issues." [6]

We review a trial court's denial of a hearing on a new-trial motion for an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339 (Tex.Crim.App.2009). The purposes of a new-trial hearing are (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex.Crim.App. 2009). There is not an absolute right to such a hearing. *Id.* However, a trial court abuses its discretion in not holding a hearing if the new-trial motion and accompanying affidavits (1) raise matters that are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Id.* A new-trial motion must be supported by an affidavit specifically setting out the factual basis for the claim. *Id.* "If the affidavit is conclusory, is unsupported by facts, or fails to provide requisite notice of the basis for the relief claimed, no hearing is required." *Id.* But a supporting affidavit "need not establish a prima facie case, or even reflect every component legally required to establish relief." *Smith*, 286 S.W.3d at 339 (citation omitted). Rather, it "is sufficient if a fair reading" of the affidavit "gives rise to rea-

6. Appellant has not raised on appeal his complaint that he was incorrectly advised regarding the applicable punishment range.

sonable grounds in support of the claim." *Id.*

We first consider appellant's claim that his trial counsel rendered ineffective assistance by giving him "false information" concerning the DNA evidence implicating him in the offenses. The State concedes that, by making this claim, appellant has raised a matter that is "not determinable from the record." Specifically, the State acknowledges that "it cannot be determined from the record what appellant's trial counsel relayed to him regarding the DNA results at the time of his plea" and "it is unknown whether appellant was advised of the DNA results." Thus, in determining whether the trial court abused its discretion in denying appellant a hearing on his new-trial motion, we need only consider whether appellant's new-trial motion and accompanying affidavit establish reasonable grounds demonstrating that he could potentially be entitled to relief on his ineffective-assistance claim. *Id.*

In order to prove an ineffective-assistance claim, a defendant must show that his trial counsel's performance fell below an objective standard of reasonableness and, but for his counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984); *Smith,* 286 S.W.3d at 340. "Reasonable probability" is a "probability sufficient to undermine confidence in the outcome," meaning "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Smith,* 286 S.W.3d at 340. Thus, before a defendant will be entitled to a hearing on a new-trial motion alleging ineffective assistance, he must allege "sufficient facts from which a trial court could reasonably conclude both that counsel failed to act as a reasonably

competent attorney and that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different." *Id.* at 340–41.

 In his motion and affidavit, appellant argued that his trial counsel was ineffective because, prior to appellant entering his guilty pleas, his counsel provided him "false information" concerning the DNA evidence in the case(s). Appellant notes that the PSI report reveals that "DNA collected at the scene" of the aggravated sexual assault committed against the first complainant was not a "match" to him. However, we also note that the report also states that, in regard to the aggravated sexual assault committed against the second complainant, "it was confirmed [that appellant's] DNA matched the DNA which was recovered from [her] rape kit." Nevertheless, the recitation of evidence contained within the PSI report is not controlling in reviewing whether appellant was entitled to a hearing on his new-trial motion based upon appellant's allegations that he was provided with ineffective assistance of counsel. Appellant provided affidavit testimony that he received "false information" from his counsel concerning the DNA evidence implicating him in one or both of the offenses. We conclude that, if it is ultimately determined that appellant's trial counsel furnished appellant with "false information" related to the DNA evidence in either or both cases, this conduct would constitute deficient performance.

In regard to the prejudice prong of *Strickland,* the State argues that appellant was not prejudiced because the "evidence implicating appellant in these two sexual assaults was overwhelming." However, as noted, the conversations, if any, between appellant and his trial counsel concerning the DNA evidence implicating appellant in the offenses is not determinable from the record, and appellant presented testimony

that, if had he been correctly advised, he would not have entered the guilty pleas. We cannot say that the "overwhelming evidence" referred to by the State in the PSI report establishes that appellant was not entitled to a hearing on his new-trial motion based upon his claims that his counsel provided him "false information" on the DNA evidence in the cases. *See Martinez v. State*, 74 S.W.3d 19, 22 (Tex. Crim.App.2002) (holding that defense counsel's failure to inform defendant of plea offer can constitute ineffective assistance of counsel and that "particulars of precisely when the plea offer was conveyed to defense counsel and the amount of time it remained available for acceptance are among the factual matters that should be fully developed at a hearing"); *Guidry v. State*, 132 S.W.3d 611, 612–13 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (holding that defendant's affidavit that his counsel failed to timely communicate State's plea offer was sufficient to put trial court on notice that reasonable grounds existed to believe that trial counsel's representation may have been ineffective and, thus, trial

court abused its discretion in not conducting hearing on defendant's new-trial motion); *Reyes v. State*, 82 S.W.3d 351, 353–54 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (holding that, without hearing on defendant's new-trial motion, court of appeals could not "determine the content of the conversations" between defendant and his lawyer and could not evaluate claim that defendant received ineffective assistance of counsel resulting in involuntary plea); *Daniels v. State*, 63 S.W.3d 67, 70 (Tex.App.-Houston [14 Dist.] 2001, pet. ref'd) (holding that defendant was entitled to hearing on his new-trial motion in which he asserted that he received ineffective assistance in light of trial counsel's providing incorrect advice on punishment range and issues of bail). Accordingly, we hold that the trial court abused its discretion in not conducting a hearing on appellant's new-trial motion.[7]

We sustain appellant's sole issue.

## Conclusion

Because appellant was entitled to a hearing on his new-trial motion, we abate

---

7. Having determined that appellant was entitled to a hearing on his new-trial motion on the ground that he received "false information" concerning the DNA evidence in one or both of his cases, we need not directly address appellant's arguments that he was entitled to a hearing on the ground of his "mental health issues." However, we do note that appellant has not explained what the "newly discovered evidence" regarding his "mental health issues" is or how this "newly discovered evidence" rendered his plea involuntary. His affidavit testimony also does not address what an investigation into his mental health issues would have revealed that reasonably could have changed the result of the case. *See Green v. State*, 264 S.W.3d 63, 68 (Tex.App.-Houston [1st Dist.] 2007, pet. ref'd) (holding that trial court did not err in not conducting hearing on motion for new trial because facts alleged by defendant concerning his mental health issues were conclusory and defendant never explained how absence of medication affected his state of mind or how medicine

affected his mental state between time of his sanity and competency evaluations and plea hearing); *see also Suarez v. State*, No. 14–10–00100–CR, 2011 WL 1662845, at *3 (Tex. App.-Houston [14th Dist.] May 3, 2011, no pet.) (mem. op., not designated for publication) (holding that new-trial motion that generally alleged "newly discovered evidence" on competence but did not contain any information about what "newly discovered evidence" was, how "newly discovered evidence" rendered plea involuntary, or what an investigation would have revealed that reasonably could have changed result of case was not sufficient to require hearing); *Dean v. State*, Nos. 2–02–087–CR, 2–02–089–CR, 2003 WL 21940898, at *4 (Tex.App.-Fort Worth Aug. 14, 2003, pet. ref'd) (mem. op., not designated for publication) (holding that defendant who submitted affidavit that he did not freely and voluntarily enter plea because he was bipolar did not meet burden of showing that reasonable grounds existed to require hearing on new-trial motion).

this appeal and remand the case to the trial court to conduct an evidentiary hearing within fourteen days from the date of this order.[8] *See Thomas v. State,* 286 S.W.3d 109, 117 (Tex.App.-Houston [14th Dist.] 2009, order) (ordering abatement to conduct hearing on new-trial motion alleging that trial counsel was ineffective for not advising defendant to agree to mistrial and not calling particular witness); *Guidry,* 132 S.W.3d at 612–13 (ordering abatement to conduct hearing on new-trial motion claiming ineffective assistance based upon counsel's alleged failure to communicate defendant's acceptance of plea offer). If the trial court grants the motion, appellant's appeal will be dismissed. If the motion is overruled, the reporter's record is to be supplemented, and the parties will be permitted to brief any issues relating to the overruling of the motion that have not already been addressed in this opinion. Any ruling is to be included in a supplemental clerk's record and transmitted to this Court within twenty-one days from the date of this order. These appeals are abated, treated as closed cases, and removed from this Court's active docket. These appeals will be reinstated on this Court's active docket when the reporter's record and supplemental clerk's record are filed in this Court.

It is so **ORDERED.**

---

8. *See* Tex.R.App. P. 43.6 (providing that "court of appeals may make any other appropriate order that the law and the nature of the case require"); Tex.R.App. P. 44.4 (providing that if trial court's error or failure to act prevents proper presentation of case on appeal and trial court can correct its error or failure to act, court of appeals "must not affirm or reverse," but "must direct the trial court to correct the error").