**Opinion issued April 25, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

NO. 01-11-00692-CR
NO. 01-11-00693-CR
_____

**LORENZO DARNELL WASHINGTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause Nos. 1177840 & 1204237

## MEMORANDUM OPINION

Appellant, Lorenzo Darnell Washington, pleaded guilty to two separate offenses of aggravated sexual assault,[1] and the trial court assessed his punishment at confinement for forty years for each offense with the sentences to run concurrently. In his sole issue, appellant contends that he received ineffective assistance of counsel.

We affirm.

## Background

Appellant, while represented by counsel, Ronald Ray, pleaded guilty to committing the offenses of aggravated sexual assault against the first complainant on July 13, 2008[2] and the second complainant on May 19, 2006.[3] In his plea papers in the case regarding the first complainant, appellant admitted that he had intentionally and knowingly caused the penetration of her sexual organ by placing his sexual organ in her sexual organ without her consent, compelled her to submit by the use of physical force and violence, and placed her in fear of imminent death and kidnapping. In his plea papers in the case regarding the second complainant, appellant admitted that he had intentionally and knowingly caused the penetration

---

[1]   *See* TEX. PENAL CODE ANN. § 22.021 (Vernon Supp. 2012).

[2]   Trial court cause number 1177840; appellate cause number 01-11-00692-CR.

[3]   Trial court cause number 1204237; appellate cause number 01-11-00693-CR.

of her sexual organ by placing his sexual organ in her sexual organ without her consent, compelled her to submit by the use of physical force and violence, and placed her in fear of imminent death. In his written plea agreements in both cases, appellant acknowledged that he was entering his pleas "without an agreed recommendation," there would be a pre-sentence investigation ("PSI") report, and his punishment would be "limited to" confinement for forty years. Ray signed the agreements, affirming that he believed that appellant was competent to stand trial and had executed the pleas knowingly and voluntarily and after a full discussion of the consequences.

The trial court signed the plea agreements in both cases, stating that it had admonished appellant of the consequences of his pleas and had ascertained that appellant entered his pleas "knowingly and voluntarily and after discussing the case(s) with his attorney." The trial court noted that appellant appeared "mentally competent," his pleas were entered "free[ly] and voluntar[ily]," and his attorney was "competent" and had "effectively represented" appellant. Additionally, the trial court, in both cases, provided appellant with written admonishments, which were signed by appellant and provided, among other things, that appellant was pleading guilty to the offenses of aggravated sexual assault, the punishment range for the offenses was confinement for "25 years to life," and the State and appellant had "agreed to a 40 year cap." In signing these admonishments, appellant

represented that he was mentally competent, understood the allegations and the nature of the proceedings, was freely and voluntarily pleading guilty, had read and understood the admonishments, and had consulted his attorney.

Prior to appellant's sentencing, a PSI report was prepared, reciting the facts of both offenses, setting forth appellant's "written statement" and the first complainant's victim-impact statement, listing appellant's prior criminal record and narcotics use, and describing his family, education, and employment history. The report contains appellant's statements, made during a personal interview, that he wanted to take his cases to trial, he was not mentally stable when he entered his guilty pleas, and he had had "consensual sex" with the second complainant. The report also contains information that appellant had noted that he had been diagnosed "with bi-polar [disorder] and schizophrenia in 2008 or 2009," jail records listed "bipolar disorder as his diagnosis," "his skull [had been] fractured in 2009 when he was hit in the head" while in custody, and he had "quit taking psychotropic medications after he pled to his PSI because they interfered with his ability to think clearly."

The trial court conducted a sentencing hearing at which it noted that it had reviewed the PSI report. At the hearing, Ray represented that "we've reviewed the report" and stated that he had "no corrections or objections." During closing arguments on punishment, Allie Booker, an attorney who also represented

4

appellant, asked the trial court to consider the fact that appellant "has problems" and that he be provided "some help in jail" for "rehabilitation." Finding appellant guilty and imposing a sentence of confinement for forty years in each case to run concurrently, the trial court entered its judgments in both cases on August 4, 2011.

On September 2, 2011, appellant filed in both cases a new-trial motion, arguing that his pleas were "not freely and voluntarily made" because he received "ineffective assistance," he suffered from "mental illness," and there was a breach of an "agreement on sentencing." He asserted that his trial counsel had incorrectly advised him about "the results of DNA testing performed prior to his guilty plea," he had pleaded guilty "in reliance on the erroneous information," and he would not have entered a guilty plea had he been advised correctly. Appellant also asserted that he had been diagnosed "as suffering from schizophrenia, bipolar disorder, and brain trauma"; he suffered from "blackouts and cognitive disorder"; and his trial counsel "failed to investigate [his] mental health history," "raise the issue of [his] sanity and competency to stand trial," and "present evidence of mental illness as mitigation at his sentencing hearing." He further asserted that although his trial counsel had advised him that the State had agreed to a sentencing range of confinement for fifteen to forty years, he was later admonished that the trial court would consider a sentence of confinement for between twenty-five and forty years.

Appellant attached to his new-trial motion an affidavit, in which he testified, in pertinent part,

> My wife paid for some DNA testing at a[n] Independent DNA Lab. [Ray] took care of everything himself. When the results came in, he told me that the DNA didn't say that I was the person that committed the crime. I was being told this for about a year, then on the day that I was set to go to trial he told me that the DNA did match me. I was given false information about the most important/the only evidence in my case. If I would have known the truth about the DNA results, I would have not pled guilty. I would have been able to get things investigated and I would have been able to discover the truth about everything. [Ray's] mistake prevented me from being able to defend myself. . . .

He further testified that he is a "mental health patient," having been diagnosed with "bi-polar and schizophrenic disorders," he suffered a "serious head injury" during an aggravated assault while incarcerated, his skull was fractured, he had been hospitalized multiple times and suffered from blackouts and memory losses, and he was "not fit to make complex or serious decisions without being given special attention or being given excessive details in advance."

The trial court initially denied appellant's new-trial motion without conducting an evidentiary hearing, and, in his initial briefing to this Court, he contended that the trial court erred in denying his request for an evidentiary hearing. Accordingly, we issued an order,[4] abating the appeal and remanding the

---

[4] *See Washington v. State*, No. 01-11-00692-CR, 2012 WL 2512717 (Tex. App.— Houston [1st Dist.] June 28, 2012, no pet.).

case to the trial court to conduct an evidentiary hearing on appellant's new-trial motion.

At the hearing on appellant's new-trial motion, appellant testified that on the day the cases were originally set to go to trial, Ray informed him that, in one of the two sexual-assault cases, DNA testing excluded appellant as a donor of DNA recovered from the scene of the offense and appellant would not have pleaded guilty in that case had he known of the negative result in the DNA testing. Ray also informed him that if he pleaded guilty to the offenses, the range of punishment would be confinement for fifteen years to life in both cases. However, in one of the cases, the range of punishment was confinement for twenty-five years to life. Appellant further testified that he had previously been treated for "schizophrenia and bipolar" while in jail, but he did not remember Ray asking him about his mental health history or requesting a psychiatric evaluation; and he believed that if Ray had investigated his mental health history, he "might not have entered a plea of guilty in both cases."

On cross-examination, appellant conceded that he did not know "exactly" how a mental health investigation would have impacted his plea decision, but he explained that it could have aided him regarding punishment. Appellant did not know that the PSI report indicated that although he had stated that he had been diagnosed as "bipolar [with] schizophrenia," he had not been diagnosed with

schizophrenia. And he noted that although the plea admonishments, which he signed, indicated the correct sentencing range for the instant offenses, he did not understand the admonishments due to "comprehension problems." In regard to the DNA testing, appellant clarified that Ray had first informed him that the DNA testing was "inconclusive." However, on the day that appellant was set to go to trial, Ray told him that he "must have misunderstood" the DNA results, which indicated a "possibility" that appellant's DNA was found at the scene.

In regard to the DNA testing, Ray testified as to his recollection that the testing in one case did not exclude appellant as a donor while the testing in the other case did exclude appellant as a donor. And appellant, who was already aware of the fact that one of the DNA tests did not exclude him as a donor, asked Ray to obtain a second, independent DNA test, which only confirmed that appellant could not be excluded as a donor. Thus, there were no "surprises or changes" regarding the DNA testing on the day that appellant pleaded guilty.

Ray explained that in trial court cause number 1204237, the State agreed to abandon an enhancement paragraph and lower the agreed sentencing range to confinement for fifteen to forty years; in trial court cause number 1177840, the sentencing range remained at confinement for twenty-five to forty years. Ray reviewed with appellant the plea agreement and admonishments, which set out the punishment range in each case. And appellant did not appear to be confused or to

misunderstand the admonishments when he signed the plea agreement. On cross-examination, Ray testified that he did not recall whether he explained to appellant that a "positive" DNA testing result would not be "dispositive" if there was "evidence of consent." However, Ray stated that he "was never told that this was a consensual sexual relation."

Booker testified that she spoke to appellant about the DNA testing results and he was aware that one DNA test implicated him in the offense at the time he pleaded guilty. Appellant stated that he did not commit the offenses, but he did not suggest that he had had any consensual sexual relations with the complainants. And Booker also maintained that both she and Ray had explained the accurate applicable punishment ranges in both cases to appellant.

After the hearing, the trial court made the following oral findings:

Specifically with regard to the DNA information, I will find that the defendant was not given any false information and that the information that was given to him was not new or different on the date of the plea. And that's based on the testimony of both of the attorneys that testified.

With regard to the mental health allegation, the Court will find that there's not any newly discovered evidence with regard to that, that it was available at the time of the plea and at the time of the P.S.I. hearing because it is mentioned in the Pre-Sentence Report.

And then, thirdly, I will find that the defendant was appropriately admonished with regard to the ranges of punishment. His own testimony is that he has some college background. Clearly seems to be bright and understands what's going on in the courtroom and obviously did at the time that I took the plea or I would not have taken

9

the plea. I did admonish him with regard to all of the consequences of punishment, and he clearly indicated that he understood everything or the Court would not have accepted the plea and gone forward. Again, I don't believe that the defendant was confused at the time of the plea, and I think that he knew what he was doing and entered that plea voluntarily.

Finally, I guess it sort of goes without saying, I don't find that the lawyers were ineffective in any or that [their] conduct was deficient.

After the hearing, the trial court denied the new-trial motion. We reinstated this appeal, and appellant then filed a supplemental brief, contending that the trial court abused its discretion in denying his new-trial motion.

## Standard of Review

In order to prove an ineffective-assistance-of-counsel claim, appellant must show that his trial counsel's performance fell below an objective standard of reasonableness and, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that his performance falls within the wide range of reasonable professional assistance or trial strategy.

10

*Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). A failure to make a showing under either prong defeats a claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

Generally, we review a trial court's denial of a new-trial motion under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). However, the United States Supreme Court has expressly held that "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Strickland*, 466 U.S. at 698, 104 S. Ct. at 2070. Accordingly, "where the trial court 'is not in an appreciably better position' than the appellate court to decide the issue, the appellate court may independently determine the issue while affording deference to the trial court's findings on subsidiary factual questions." *Villareal v. State*, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996) (McCormick, P.J., concurring) (citing *Miller v. Fenton*, 474 U.S. 104, 110–17, 106 S. Ct. 445, 450–53 (1985)); *see Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999). Yet, the trial court remains in the best position to "evaluate the credibility" of the witnesses and resolve such conflicts. *Kober*, 988 S.W.2d at 233; *see Strickland*, 466 U.S. at 698, 104 S. Ct. at 2070. And, acting as fact-finder, it can choose to believe or disbelieve all or any part of the witnesses'

testimony. *See Johnson v. State*, 169 S.W.3d 223, 239–40 (Tex. Crim. App. 2005); *Kober*, 988 S.W.2d at 233.

## Ineffective Assistance of Counsel

In his sole issue, appellant argues that the trial court erred in denying his new-trial motion because his guilty plea was "not freely and voluntarily made" due to ineffective assistance of counsel and trial counsel's failure "to investigate and offer evidence of his history of mental illness."

### *Voluntariness of Plea*

Appellant first complains that had his trial counsel "adequately and timely communicated the implications of the DNA test results, . . . it is reasonably believable that [he] would not have entered guilty pleas in one or both cases," and had trial counsel "adequately and timely explained the range of punishment, it is reasonably believable [that he] would not have entered guilty pleas."

In determining whether a plea was made voluntarily, we consider the record as a whole. *Fimberg v. State*, 922 S.W.2d 205, 207 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (citing *Williams v. State*, 522 S.W.2d 483, 485 (Tex. Crim. App. 1975)). A record that indicates that a trial court properly admonished the defendant presents a prima facie showing that the defendant's guilty plea was made voluntarily and knowingly. *Arreola v. State*, 207 S.W.3d 387, 391 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Martinez v. State*, 981 S.W.2d

195, 197 (Tex. Crim. App. 1998)). When the record presents a prima facie showing that the plea was made voluntarily and knowingly, the burden shifts to the defendant to show that he entered the plea without understanding the consequences of it. *Id.* (citing *Edwards v. State*, 921 S.W.2d 477, 479 (Tex. App.—Houston [1st Dist.] 1996, no pet.). An accused who attests when he enters his plea of guilty that he understands the nature of his plea and it was voluntarily made has a heavy burden on appeal to show that his plea was made involuntarily. *Id.* However, a guilty plea is not voluntarily made if made as a result of ineffective assistance of counsel. *Ex parte Niswanger*, 335 S.W.3d 611, 614–15 (Tex. Crim. App. 2011).

In regard to determining whether counsel was ineffective where a defendant has pleaded guilty, we note that the voluntariness of the defendant's plea depends on (1) "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases," and if not, (2) "whether there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Ex parte Moody*. 991 S.W.2d 856, 857–58 (Tex. Crim. App. 1999) (quoting *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997)).

In regard to the DNA testing results, appellant presented conflicting testimony. He first testified that Ray did not inform him that the DNA testing result for one of the offenses was negative until the day he was initially set to go to

trial. However, he later testified that "way before the plea" he was aware of the negative DNA testing result. He explained that he was confused as to whether the positive DNA result implicated him in regard to the pertinent offense. More importantly, Ray testified that appellant was fully aware of the DNA testing results in both cases, specifically noting that appellant was aware of the positive result because that was the result that his family had asked to be retested. Ray explained that the only "new" information received on the day of the plea concerned the results of the retest, which simply confirmed the previous positive DNA testing result. And Booker testified that she had "lengthy conversations" with appellant, fully explaining the DNA testing results and their implications. Here, the trial court acted within its discretion in believing the testimony of Ray and Booker that they adequately informed appellant of the DNA testing results. *See Kober*, 988 S.W.2d at 233. As a result, it could have reasonably concluded that counsels' advice regarding the DNA testing results was within the range of competence demanded of attorneys. *See Moody*, 991 S.W.2d at 857–58.

In regard to sentencing, appellant testified that he believed that the range of punishment in both cases was confinement for fifteen to forty years and he did not realize that the range in cause number 1177840 was confinement for twenty-five to forty years. He also testified that he was "bipolar," had not been receiving all of his medications at the time of his guilty plea, and, as a result, did not fully

14

understand the consequences of his plea. He further testified that he had difficulty reading the plea documents. However, as noted above, appellant did sign the written admonishments in cause number 1177840, which indicated that the punishment range was confinement for twenty-five to forty years. Thus, the record presents a prima facie showing that appellant entered his plea knowingly and voluntarily, and he faces a "heavy burden" to demonstrate otherwise. *See Arreola*, 207 S.W.3d at 391.

Ray testified that he persuaded the State to drop an enhancement paragraph in cause number 1204237, reducing the minimum sentence to confinement for fifteen years, but the minimum punishment in the other cause number remained at twenty-five years. He explained the correct punishment range in both cases to appellant before appellant signed the admonishments, and appellant did not appear "confused" when he signed the admonishments. Booker also testified that both she and Ray explained the applicable punishment ranges to appellant. And, although appellant testified that he did not understand the admonishments due to mental health issues and an inability to read, the trial court specifically noted that appellant had some college background, appeared to be "bright," and "clearly" understood the consequences of his plea. The trial court simply could have chosen to believe the testimony of Ray and Booker and disbelieve the testimony of appellant, and it could have reasonably concluded that counsels' advice regarding

the punishment range was within the range of competence demanded of attorneys. *See Kober*, 988 S.W.2d at 233; *Moody*, 991 S.W.2d at 857–58.

Accordingly, we hold that the trial court did not abuse its discretion in denying appellant's new-trial motion on the ground that he entered his plea of guilty involuntarily.

### *Mental Health Evidence*

Appellant next argues that the trial court erred in denying his new-trial motion because trial counsel "failed to investigate and present mitigating evidence that [he had] suffered a fractured skull" and "may have suffered cognitive injuries as a result." He asserts that trial counsel failed "to investigate and present substantive evidence of [his] history of mental illness."

Here, the PSI report indicates that appellant "went to a mental health clinic all the time" as a child. It also states that although appellant claimed he had been diagnosed as "bipolar [with] Schizophrenia," jail medical records revealed only "bipolar disorder" as a diagnosis. The PSI report also indicates that appellant had reported that his skull was fractured in 2009. And the trial court noted that it had reviewed the PSI report before the hearing. In her closing statement, Booker asked the trial court to impose "the lower end of the sentencing range" so that appellant could "get some help in jail that will help him." Although appellant argues that trial counsel should have presented expert testimony regarding his mental health

issues, he does not identify what evidence an expert could have presented beyond what was already before the trial court. *See, e.g., Brown v. State*, 334 S.W.3d 789, 803 (Tex. App.—Tyler 2010, pet. ref'd) ("[T]he failure to request the appointment of an expert witness is not ineffective assistance in the absence of a showing that the expert would have testified in a manner that benefitted the defendant."); *see also Granados v. State*, No. 01-10-00547-CR, 2011 WL 5026406, at *5 (Tex. App.—Houston [1st Dist.] Oct. 20, 2011, pet. ref'd) ("We will not hold that counsel was ineffective for failing to request the appointment of an expert when the record does not demonstrate that the expert would have benefitted appellant's defense."). From this record, we cannot conclude that trial counsel was deficient in not presenting any mental health evidence beyond that which was already before the trial court.

Accordingly, we hold that the trial court did not abuse its discretion in denying appellant's new-trial motion on the ground that his trial counsel was deficient in not presenting mental health evidence from an expert witness.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish.   TEX. R. APP. P. 47.2(b).