**Opinion issued November 30, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00295-CR

———————————

**DENISE RODRIGUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1662580**

## MEMORANDUM OPINION

Appellant Denise Rodriguez pleaded guilty to the offense of evading arrest or detention with a motor vehicle. The trial court deferred a finding of guilt and placed Appellant on deferred-adjudication community supervision for two years. The State later moved to adjudicate guilt alleging several violations of Appellants'

community supervision.  Following a contested hearing, the trial court found two of the State's allegations true and sentenced Appellant to eight years of confinement in the Texas Department of Criminal Justice—Institutional Division. Appellant filed a motion for new trial, which the trial court denied without a hearing.  This appeal followed.

Appellant raises four issues on appeal.  In her second issue, she requests we abate the appeal so that she may file an out of time motion for new trial based on her allegations "she was denied the assistance of counsel during the period in which she could [have] file[d] a motion for new trial in violation of the Sixth and Fourteenth Amendment[s] to the United States Constitution" and because her "[a]djudication counsel abandoned [her] appeal during the motion for new trial time period."  In her remaining issues, she argues (1) the trial court abused its discretion by denying her a hearing on her motion for new trial, (2) her attorney rendered ineffective assistance of counsel at the adjudication hearing, and (3) the trial court erred in failing to conduct an informal inquiry on Appellant's competency.

We deny Appellant's request to abate the appeal, and affirm the trial court's judgment.

## Background

Appellant Denise Rodriguez pleaded guilty to the third-degree felony offense of evading arrest or detention with a motor vehicle without an agreed recommendation as to punishment.[1] The trial court deferred a finding of guilt and placed Appellant on deferred-adjudication community supervision for two years. As part of her guilty plea and her acceptance of deferred adjudication, Appellant signed a document called "Conditions of Community Supervision." Relevant to this appeal, Appellant agreed, under the Conditions of Community Supervision, that she would:

1.  Commit no offense against the laws of this or any other State or of the United States. You are to report any arrests within 24 hours.

    . . .

21. You must place a court-approved deep-lung breath analysis mechanism (ignition interlock) with photographic capabilities on any

---

[1] *See* TEX. PENAL CODE § 38.04(b)(2)(A). Although not addressed by Appellant, the State points out that while the indictment only alleged that Appellant committed the misdemeanor offense of evading detention, it did not include the element of use of a motor vehicle while in flight. Because the indictment was returned to a felony court and Appellant did not object to any defect in the indictment prior to pleading guilty, the indictment satisfied the constitutional requirements for subject-matter jurisdiction. *See Kirkpatrick v. State*, 279 S.W.3d 324, 329 (Tex. Crim. App. 2009) ("[A]lthough the indictment properly charged a misdemeanor and lacked an element necessary to charge a felony, the felony offense exists, and the indictment's return in a felony court put appellant on notice that the charging of the felony offense was intended. . . . Appellant had adequate notice that she was charged with a felony. If she had confusion about whether the State did, or intended to, charge her with a felony, she could have, and should have, objected to the defective indictment before the date of trial.").

vehicle you drive, to make impractical the operation of the motor vehicle if ethyl alcohol is detected in your breath beginning 09/08/21 until released by further order of the Court. You may not operate a motor vehicle unless it is equipped with an above said device. If you do not have a vehicle or access to a vehicle upon which you can install the above said device, you are ordered to have a court-approved At-Home Alcohol Monitor or a Secure Continuous Remote Alcohol Monitoring (SCRAM) device within 7 days of this order. You must comply with all vendors rules pertaining to the use and maintenance of the device.

. . .

24. Attend Intensive Outpatient Program and/or Supportive Outpatient Program and Aftercare until successfully completed or as designated by the court.

Three months after entering her guilty plea, Appellant was again arrested for evading arrest or detention with a motor vehicle. The State moved to adjudicate Appellant's guilt, asserting five violations of Appellant's Conditions of Community Supervision. Appellant was remanded into custody, and on March 15, 2022, the trial court conducted a hearing on the State's motion to adjudicate guilt.

## A. Adjudication Hearing

During the adjudication hearing, the State abandoned two of the five allegations asserted in its motion to adjudicate, proceeding only on the allegations that Appellant (1) committed a new offense of evading arrest or detention with a motor vehicle, (2) failed to install an ignition interlock device on her car, and (3) failed to attend an intensive outpatient treatment program. Appellant appeared at

the adjudication hearing with counsel[2] and pleaded "not true" to the allegations. Three witnesses testified at the adjudication hearing.

### 1. Priscilla Leos

Officer Priscilla Leos, a deputy with the Harris County Sheriff's Department, testified that on December 21, 2021, she was on patrol around midnight when she observed a maroon Mitsubishi Montero SUV ("SUV"). She conducted a traffic stop because the tags were expired and the SUV did not signal when making a lane change. Officer Leos activated her lights and sirens and attempted to make a traffic stop, but the SUV did not stop.

As Officer Leos pursued the SUV with lights and sirens activated, the SUV failed to maintain a single lane traveling at a high rate of speed, at one point traveling up to 93 miles per hour in a zone with a posted speed limit of 40 miles per hour. Ultimately, the SUV ran through a red light and crashed into a concrete wall. Officer Leos identified Appellant as the driver of the SUV.

After the SUV crashed, Officer Leos "clearly [saw] that [Appellant] was changing seats." Officer Leos testified, "[s]he was claiming someone else was in

---

[2] Appellant was appointed two separate attorneys during the trial court proceedings. Appellant's first appointed counsel represented her through her plea of guilty and placement on deferred adjudication community supervision. Appellant's second appointed counsel represented her during the adjudication hearing. In her motion for new trial and on appeal, Appellant complains about her adjudication counsel. Our reference in the opinion to Appellant's "trial counsel" refers to the adjudication hearing attorney.

the vehicle when we could clearly see that she was changing seats. We could see her jumping from the driver's seat to the passenger seat to the backseat. She was noncompliant. . . . [S]he refused to get out of the vehicle."

Officer Leos testified his pursuit of Appellant lasted about one or two minutes and spanned 1.6 miles. Appellant was detained for evading arrest. Officer Leos and her colleagues conducted a probable-cause search of the SUV. Another deputy found what appeared to be methamphetamine on the driver floorboard and brought it to the attention of Officer Leos. Officer Leos testified she believed 0.63 grams of methamphetamine was recovered.

On cross-examination, Officer Leos testified that Appellant exited the SUV on the back passenger's side. According to Officer Leos, Appellant was the only person in the SUV, having jumped from the driver's seat to the passenger seat to the backseat.

### 2. Dennis Davis

Dennis Davis is the Harris County Community Supervision and Corrections' Court Liaison (probation) Officer for the 182nd District Court of Harris County. He testified Appellant was placed on probation on September 8, 2021 in Cause No. 1662580 for the third-degree felony of evading arrest with a vehicle. The trial court gave her a two-year probated sentence.

Davis testified he explained the terms and conditions of probation to Appellant on September 8, 2021. Relevant to this appeal, Condition 1 of Appellant's community supervision required that Appellant not commit any "offense against the laws of this or any other State or of the United States." Condition 21 required Appellant to install a "court-approved deep-lung breath analysis mechanism (ignition interlock) with photographic capabilities" on any vehicle she drove beginning September 8, 2021. And it further stated Appellant could "not operate a motor vehicle unless it [was] equipped with [the ignition interlock] device." Davis testified that Appellant disregarded this condition. Condition 24 also required Appellant to "[a]ttend Intensive Outpatient Program and/or Supportive Outpatient Program and aftercare until successfully completed or as designated by the court." According to Davis, Appellant did not complete that program.

On cross-examination, Davis conceded that Appellant was never given a date to begin the intensive outpatient program, although Davis "told [Appellant] that she needed to start the program." Given the absence of a required start date, Davis conceded that Appellant had not violated Condition 24.

### 3. Denise Rodriguez

Appellant testified she was never told to meet with Davis, the court's probation officer, and that her "regular" probation officer was in Baytown, Texas.

7

She stated she was not told or did not know she had a time limit for placing the ignition interlock on her car. And even had she known about the time limit, she would not have placed the device in her car within seven days because she was told to meet with her probation officer first. Appellant testified she did not have money to place the ignition interlock in her car because she was not working, as she had been on house arrest. She testified she had found a job shortly before her arrest on December 21, 2021, but after her arrest, she could not work.

When her trial counsel asked whether she had a valid registration sticker on her car and whether anyone was in the car with her on December 21, 2021, she stated she had "no comment on the case." Asked whether she was driving the car that night, she said, "No comment on everything."

On cross-examination, Appellant testified that after evading arrest on January 29, 2020, she was placed on deferred adjudication community supervision. At that time, she signed a document identifying the conditions of her community supervision. She conceded that her signature appeared on the copy of the order of deferred adjudication dated September 8, 2021, which included Appellant's conditions of community supervision. When asked whether her signature conveyed that she understood that her failure to abide by the conditions of community supervision could result in revocation of her community supervision or an adjudication of guilt, Appellant stated, "No comment." Appellant then invoked

the Fifth Amendment in response to questions concerning her violations of the conditions of her community supervision. The trial court admonished Appellant explaining to her that she did not have a Fifth Amendment right against self-incrimination because she had taken the stand voluntarily:

STATE: Judge, the defendant in this case has no Fifth Amendment Right after taking the stand. And we'd ask that you instruct her to answer the questions.

COURT: Ma'am, I don't -- you chose to take the stand in this case. You can't pick and choose what questions you want to answer now. So, if you want to continue with being -- I'm not going to -- what you've testified to, I will disregard if you decide to pick and choose what questions you want to answer. Let me put it to you that way. And I don't believe you do have the Fifth Amendment Right to self-incrimination when you are on the stand and being asked questions that you wanted to -- that you availed yourself to be on the stand for.

Appellant responded she did not know she was having a hearing that day. The State continued its cross-examination and Appellant again invoked the Fifth Amendment. At the State's request, the trial court announced it would disregard Appellant's testimony.

At the end of the hearing, Appellant's trial counsel argued that when Appellant was placed on community supervision, she did not understand what was expected of her. He believed that "at the time she was placed on [community supervision, Appellant] actually didn't understand what was going on or what was expected of her as far as the probation was concerned[.]" He argued Appellant

9

"probably did not understand she had to get a deep lung device or an interlock device on her car." Appellant's counsel asked the trial court to be lenient in sentencing her.

The State argued Appellant was "not accountable" and had no respect for the court, the proceedings, or her probation terms. Even if Appellant had questions about her community supervision, the State argued she had two probation officers, one in the court and one in Baytown, to whom she could have directed her questions, yet she never reached out to either one to discuss the terms of her community supervision. The State argued Appellant refused to take any accountability for her actions and argued that such a person is "a dangerous person, a person who is unwilling to change." The State requested that the full range of punishment be imposed against Appellant.[3]

The trial court found "true" the State's allegations that Appellant violated Condition 1 of her community supervision by committing a new offense of evading arrest or detention on December 21, 2021, and Condition 21 by failing to install an ignition interlock device in her car. The trial court found "not true" the allegation that Appellant failed to attend an intensive outpatient treatment program in violation of Condition 24.

---

[3] "An individual adjudged guilty of a felony of the third degree shall be punished by imprisonment in the Texas Department of Criminal Justice for any term of not more than 10 years or less than 2 years." *See* TEX. PENAL CODE § 12.34(a). In addition, a fine up to $10,000 can be assessed. *Id.* § 12.34(b).

The trial court adjudicated Appellant guilty on her original offense of evading arrest in a motor vehicle. The court asked whether the parties had evidence for punishment. Both parties declined, and neither side offered testimony regarding punishment.

**B.     Motion for New Trial**

On March 15, 2022, the trial court assessed Appellant's punishment at eight years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. On April 8, 2022, Appellant filed three *pro se* notices of appeal, one on a pre-printed form and two handwritten.

Three days later, on April 11, 2022, Appellant's trial counsel moved to withdraw, stating in his motion that he represented Appellant "in a motion to adjudicate hearing," that Appellant "now wishes to appeal the [c]ourt's decision," and "he does not do appeals." The following day, Appellant filed a "Pauper's Oath on Appeal" requesting the appointment of appellate counsel. That same day, on April 12, 2022, the trial court granted trial counsel's motion to withdraw and appointed appellate counsel for Appellant, two days before the deadline for Appellant to file a motion for new trial. *See* TEX. R. APP. P 21.4(a).

Appellant timely moved for a new trial on April 14, 2022. She accompanied her motion with a proposed order setting the motion for hearing and a proposed certificate of presentment. In the motion, Appellant's counsel stated, erroneously,

11

that Appellant "pleaded true to the allegations [] she violated the terms of her deferred adjudication community supervision and proceeded to a hearing in front of the trial court without an agreed recommendation." Based on this misunderstanding, Appellant requested a new trial claiming she had "entered her plea of true involuntarily." Appellant argued that she received ineffective assistant of counsel "before her plea of 'true' due to [trial] counsel's failure to investigate [her] mental health and the possibility that she was incompetent to enter her plea." She argued that "[a]ssuming [Appellant] was competent to enter her plea of 'true,'" she received ineffective assistance "when [trial] counsel failed to investigate or present evidence regarding [Appellant's] mental health history as mitigation evidence," which according to Appellant, "may have led to a different sentence."

Appellant attached five exhibits to her motion for new trial: (1) an undated handwritten letter from Appellant,[4] (2) a Harris County Special Needs Response Form, (3) documents pertaining to a psychiatric evaluation of Appellant in a separate case, (4) a signed declaration from Appellant, and (5) literature from the Mayo Clinic about the prescription medication risperidone.

---

[4] Appellant filed two handwritten letters with the trial court, one without a date (filed stamped March 25, 2022) and the other dated March 19, 2022 (file stamped March 30, 2022). Both letters are substantially the same. In her brief, Appellant acknowledges she signed both letters but states she "did not write [the letters] herself." The first letter, the one undated and filed stamped March 25, 2022, is the letter attached to Appellant's motion for new trial.

In Appellant's handwritten letter to the trial court, file stamped March 25, 2022, Appellant states that her trial counsel advised her that she had a court hearing on March 15, 2022, of which he was "unaware" and for which he was "unprepared."[5]  Appellant stated in the letter that she "did not understand how [she] would have 8 years for [a] probation violation on evading arrest when probation length was only 2 years" and that "originally," she felt her attorney "did not fully explain to [her] the terms/conditions that [she] was signing for and [she] signed under duress."[6]  She asked for the case to be reopened "due to unfair sentencing."

---

[5]    In her motion for new trial, Appellant did not argue that her trial counsel was unprepared for the adjudication hearing held on March 15, 2022.  She argued primarily that she had involuntarily entered a voluntary plea and that her counsel did not present evidence that could have mitigated the sentence she received.

[6]    It appears that in this portion of her letter, Appellant is complaining about her initial plea of guilty entered in September 2021.  But Appellant's adjudication counsel, who is the only counsel Appellant complains about in her motion for new trial, is not the same counsel who represented Appellant in September 2021, when she pleaded guilty to the original offense of evading arrest, resulting in deferred adjudication community supervision and the "terms/conditions" she presumably claims in her letter she did not understand and signed "under duress."  We note that in September 2021, Appellant (and her then trial counsel) signed an "Admonishment" document where Appellant acknowledged, among other things, that she "fully underst[ood] the consequences of [her] plea []and after having fully consulted with [her] attorney, [she] hereby request the trial court accept said plea," that her "plea [was] freely, knowingly, and voluntarily made," and that she was "totally satisfied with the representation provided by my counsel and I received effective and competent representation."

13

The Harris County Special Needs Response Form, attached to Appellant's motion as Exhibit B, identified Appellant's current psychotropic medications and her state mental hospital history. The form indicates that Appellant was diagnosed with bipolar disorder on December 22, 2021, and that risperidone was prescribed to Appellant. The exhibit reflects Appellant's mental health diagnoses beginning in 2005.

In Exhibit C to her motion, Appellant attached a motion filed by the State and Appellant on July 12, 2011 requesting a psychiatric evaluation of Appellant in a separate case involving the burglary of a habitation, a signed order dated July 13, 2011 granting the motion and ordering a psychiatric examination of Appellant to determine her competency under Article 46B of the Texas Code of Criminal Procedure, and a June 7, 2012 order for Restoration of Competency providing, "It is therefore ORDERED by the Court that the above named defendant is at this time mentally competent, as found by the Court, and that [s]he stand trial another day."[7]

Appellant's declaration dated April 14, 2022, attached as Exhibit D to her Motion, stated Appellant never spoke with her trial counsel[8] about her case and she

---

[7]    The motion for psychiatric examination and corresponding order granting the motion were filed in Cause No. 1294211, styled *State of Texas v. Denise Rodriguez*, in the 180th District Court of Harris County, Texas. But the June 7, 2012 Order for Restoration of Competency was entered in Cause No. 129421101010, *State of Texas v. Denise Rodriguez*, in the 351st District Court of Harris County, Texas.

[8]    In her declaration, Appellant specifically refers to her adjudication counsel.

14

did not "understand or know" what she was accused of doing. She claimed her trial counsel told her he was unprepared for the adjudication hearing, but that she had no choice, and "we had to do the hearing." Appellant states she "didn't want to plead 'true'" and she "tried to take the 5th" and she "didn't want to get more time." She claimed her trial counsel called no witnesses to testify on her behalf and never asked her if there "was anyone who would come to testify." Appellant explained she has two sisters in Houston, Texas, and that she has been taking medication for bipolar disorder since she was 13 or 14 years old. She stated that "[n]one of her lawyers asked [her] to sign a release for [her] mental health records or [her] juvenile records." Appellant claimed she had no understanding of what she was signing when she accepted the deferred adjudication and that she did not "talk with her other lawyer about [her] mental health before I did my plea."[9] She further stated that before she "did [her] plea for deferred adjudication," she "was in the free world" and not taking her medication. Appellant explained she was presently taking risperidone in jail for her bipolar disorder.

The final exhibit attached to the motion, Exhibit E, is literature from the Mayo Clinic concerning the prescription medication risperidone. It states risperidone is "used to treat schizophrenia, bipolar disorder, or irritability associated with autistic disorder."

---

[9] It appears that here, Appellant is referring to her first trial counsel.

15

Appellant filed her motion for new trial on April 14, 2022. Pursuant to Texas Rule of Appellate Procedure 21.6, she presented her motion to the trial court that same day.[10] The trial court signed a certificate of presentment on April 21, 2022. At that time, Appellant explains, it was discovered that the judgment and sentence contained the erroneous indication that Appellant had pleaded "true" to the State's allegations she violated the conditions of her community supervision.[11] The trial court corrected the judgment and sentence *sua sponte* to reflect that Appellant pleaded "not true."[12]

On May 5, 2022, the trial court denied Appellant's request for a hearing on her motion for new trial and denied the motion by written order.

---

[10]  Texas Rule of Appellate Procedure 21.6 provides that in a criminal case, the "defendant must present the motion for new trial to the trial court within 10 days of filing it, unless the trial court in its discretion permits it to be presented and heard within 75 days from the date when the court imposes or suspends sentence in open court." TEX. R. APP. P. 21.6. Pursuant to Rule 26.1, Appellant filed a "Certificate of Presentment" on April 14, 2022, presenting the motion for new trial "to the trial court within 10 days of filing." The trial court signed the Certificate of Presentment on April 21, 2022.

[11]  This presumably explains why counsel argued in Appellant's motion for new trial that Appellant "pleaded true to the allegations that she violated the terms of her deferred adjudication community supervision," that Appellant entered her "plea of true involuntarily," and that trial counsel had been ineffective in failing to investigate Appellant's "mental health and the possibility that she was incompetent to enter her plea."

[12]  The judgment adjudicating guilt inaccurately reflected that Appellant had pleaded "true" to the State's motion to adjudicate. According to the docket sheet in the appellate record, the trial court corrected the error on March 15, 2022, the same day as the adjudication hearing, and before Appellant filed her motion for new trial.

This appeal ensued.

**Motion for New Trial and Ineffective Assistance of Counsel**

In her first issue, Appellant argues the trial court abused its discretion by denying Appellant a hearing on her motion for new trial. In her third issue, she argues her trial attorney rendered ineffective assistance of counsel by failing to investigate or present mitigating evidence at the adjudication hearing. Because Appellant's motion for new trial is based mainly on her claim of ineffective assistance of counsel, we address both issues together.

**A.     Standard of Review and Applicable Law**

**1.     Ineffective Assistance of Counsel**

The Sixth Amendment of the United States Constitution guarantees an accused the right to reasonably effective assistance of counsel in criminal prosecutions. U.S. CONST. amend. VI; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *Caballero v. State*, ___ S.W.3d ___, No. 01-19-00878-CR, 2023 WL 2718466, at *10 (Tex. App.—Houston [1st Dist.] Mar. 31, 2023, pet. filed). To determine whether an appellant has established a claim for ineffective assistance of counsel, we utilize the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Lopez*, 343 S.W.3d at 142.[13]

---

[13]     Texas adopted the *Strickland* test in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986).

17

To prevail under the *Strickland* analysis, the appellant must establish by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness, and (2) but for the deficient performance, there is a reasonable probability the result of the proceeding would have been different. *Id.* (citing *Strickland*, 466 U.S. at 689). "'Reasonable probability' is a 'probability sufficient to undermine confidence in the outcome,' meaning 'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009) (quoting *Strickland*, 466 U.S. at 687, 694).

The *Strickland* factors are "judged by the 'totality of the representation,' not by counsel's isolated acts or omissions, and the test is applied from the viewpoint of an attorney at the time he acted, not through 20/20 hindsight." *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012) (citing *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990)); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). There is a strong presumption that a trial counsel's conduct falls "within the wide range of reasonable assistance," and that counsel's decisions were motivated by sound trial strategy. *Id.* (citing *Ex parte White*, 160

18

S.W.3d 46, 51 (Tex. Crim. App. 2004) (quoting *Strickland*, 466 U.S. at 689));

*Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (holding that in our

highly deferential review of counsel's performance, appellate courts indulge

"strong presumption that counsel's conduct fell within a wide range of reasonable

representation"). "The mere fact that another attorney might have pursued a

different tactic at trial does not suffice to prove a claim of ineffective assistance of

counsel." *Ex parte Jimenez*, 364 S.W.3d at 883 (citing *Ex parte Miller*, 330

S.W.3d 610, 616 (Tex. Crim. App. 2009)).

An appellant bears the burden to establish both prongs of the *Strickland*

analysis. Failure to satisfy one prong of the *Strickland* test negates an appellate

court's need to consider the other prong. *Williams v. State*, 301 S.W.3d 675, 687

(Tex. Crim. App. 2009); *see Lopez*, 343 S.W.3d at 142 ("Unless appellant can

prove both prongs, an appellate court must not find counsel's representation to be

ineffective.").

### 2. Motion for New Trial

A defendant in a criminal case "may file a motion for new trial before, but

not later than 30 days after, the date when the trial court imposes or suspends

sentence in open court." TEX. R. APP. P. 21.4(a). A defendant does not have an

absolute right to a hearing on the motion. *Washington v. State*, 394 S.W.3d 39, 42

(Tex. App.—Houston [1st Dist.] 2012, no pet.). The purpose of a hearing on a

motion for new trial is (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal. *Id.*

"Before [a defendant] will be entitled to a hearing on [her] motion for new trial alleging ineffective assistance of counsel, [she] must allege sufficient facts from which the trial court could reasonably conclude *both* that counsel failed to act as a reasonably competent attorney *and* that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different." *Smith*, 286 S.W.3d at 340–41 (emphasis in original). We review a trial court's denial of a hearing on a motion for new trial for abuse of discretion. *Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010) (quoting *Smith*, 286 S.W.3d at 339–40). We will reverse "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.*

A court abuses its discretion in not holding a hearing if the motion for new trial and accompanying affidavits (1) raise matters that are not determinable from the record and (2) establish reasonable grounds showing the defendant could potentially be entitled to relief. *Id.* at 842; *see also Washington*, 394 S.W.3d at 42. The State does not dispute that the issues presented in Appellant's motion are "not determinable from the record." We thus consider only whether Appellant

established "reasonable grounds showing [she] could potentially be entitled to relief."

A motion for new trial must be supported by an affidavit that sets forth the factual basis for the relief sought. "If the affidavit is conclusory, is unsupported by facts, or fails to provide requisite notice of the basis for the relief claimed, no hearing is required." *Washington*, 394 S.W.3d at 42 (citing *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009)). The motion and affidavits need not establish a prima facie case or even reflect every component legally required to establish relief. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993)); *Washington*, 394 S.W.3d at 42. They must "merely reflect that reasonable grounds exist for holding that such relief could be granted." *Wallace*, 106 S.W.3d at 108 (citing *Martinez v. State*, 74 S.W.3d 19, 22 (Tex. Crim. App. 2002)).

We review a trial court's denial of a motion for new trial on the issue of ineffective assistance of counsel for abuse of discretion. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded by statute on other grounds by* TEX. R. APP. P. 21.8(b). We review the evidence in the light most favorable to the trial court's ruling. *Id.* We "presume that all reasonable factual findings that could have been made against the losing party were made against that losing party. Thus, a trial court abuses its discretion in denying a motion for new trial only when

21

no reasonable view of the record could support the trial court's ruling." *Id. See also Caballero*, 2023 WL 2718466 at *9 ("Because Caballero raised his ineffective-assistance claim in a denied motion for new trial . . . we analyze the claim on appeal as a challenge to the trial court's ruling on that motion, and we review the ruling under an abuse-of-discretion standard. We will reverse the trial court's ruling only if the decision to deny the new-trial motion was arbitrary or unreasonable, viewing the evidence in the light most favorable to the ruling.") (internal citations omitted). When, as here, the trial court does not make findings of fact on the denial of a motion for new trial, we "impute implicit factual findings that support the trial judge's ultimate ruling when such implicit factual findings are both reasonable and supported in the record." *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005).

**B.     Analysis**

    **1.     Ineffective Assistance of Counsel**

In addressing Appellant's third issue concerning her claim of ineffective assistance of counsel, we first address the State's argument that because there was no hearing on Appellant's motion for new trial, the evidence presented in support of Appellant's motion is not before this Court. Citing *Rouse v. State*, the State argues that "post-trial motions . . . are not self-proving and any allegations made in support of them by way of affidavit or otherwise must be offered into evidence at a

hearing." 300 S.W.3d 754, 762 (Tex. Crim. App. 2009). In *Rouse*, the Court of Criminal Appeals held it was erroneous for the intermediate court of appeals to rely on allegations in a post-trial pleading titled "Motion for Appeal" to determine whether the appellant's guilty plea was involuntary, because the pleading was not self-proving and was not introduced into evidence at any hearing where the trial court, as factfinder, could evaluate it. *Id.* at 762.

At least two of our sister courts have distinguished *Rouse* in situations factually aligned with those in the present case, where unlike in *Rouse*, the defendants requested a hearing on the motion for new trial and the motion was denied by written order.[14] *See Davis v. State*, 413 S.W.3d 816, 829 (Tex. App.—Austin 2013, pet. ref'd) (considering evidence put forth by defense counsel in motion for new trial even though there had been no hearing on motion, observing that the "motion for new trial—which was considered, ruled on, and the subject of findings by the trial court—differ[ed] from the motion at issue in *Rouse*, which was overruled by operation of law with no hearing requested and 'no fact finder' having evaluated the statement."); *Baukus v. State*, No. 09-13-00397-CR, 2016 WL 908281, at *4 (Tex. App.—Beaumont Mar. 9, 2016, pet. ref'd) (mem. op., not

---

[14] In *Rouse v. State*, the post-trial motion was overruled by operation of law and there was no indication in the record that a hearing was requested. 300 S.W.3d 754, 760 (Tex. Crim. App. 2009).

designated for publication) (distinguishing *Rouse* and holding it could consider motion for new trial and attachments because, among other things, Baukus "requested a hearing on her motion for new trial, and the trial court considered and ruled on the motion without holding a hearing").

We need not decide whether *Rouse* precludes our review of the evidence attached to Appellant's motion for new trial because, with or without the attachments, we hold the trial court did not abuse its discretion in denying Appellant's motion or her request for a hearing.

### a.    Objective Standard of Reasonableness

To satisfy the first *Strickland* element, Appellant must establish counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).  She must establish that her counsel made errors "so serious" that he was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Gutierrez v. State*, 602 S.W.3d 17, 22 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (citing *Strickland*, 466 U.S. at 687).

In her appellate brief, Appellant argues her counsel "failed to prepare for the [adjudication] hearing," failed "to investigate possible mitigating evidence, and fail[ed] to present any mitigating evidence at the punishment phase of the proceedings."  She argues that her counsel did not bring "mitigating facts"

regarding Appellant's mental health history to the court's attention "even after the State's attorney characterized Appellant's obvious confusion at the adjudication hearing as a refusal to be accountable for her actions." Appellant contends trial counsel "failed to communicate with her about possible mitigation evidence because he never asked her for names of potential witnesses, never asked about her background, or her mental health status."

Appellants' arguments on appeal do not appear to align with her arguments before the trial court. As the State notes, Appellant's motion for new trial is based primarily on her counsel's erroneous assertions that Appellant pleaded "true" to the allegations she violated the conditions of her community supervision and her plea was not entered voluntarily. Appellant argued in her motion for new trial that she "pleaded true to the allegations [] she violated the terms of her deferred adjudication community supervision and proceeded to a hearing in front of the trial court without an agreed recommendation." Based on this understanding, she requested a new trial because she had "entered her plea involuntarily." She argued that for a plea to be voluntary, a defendant "must be competent to understand what she may agree to and be competent to make a rational decision regarding her legal options," and Appellant "has a long history of mental illness documented since her teenage years" that "impacts her ability to understand legal proceedings and allegations against her." She argued she "received ineffective assistance of counsel

25

before her plea of 'true' due to defense counsel's failure to investigate [her] mental health and the possibility that she was incompetent to enter her plea."

Appellant did not argue in her motion, as she does now, that her counsel was unprepared for the adjudication hearing. Nor does her motion contain any argument about potential witnesses. As it concerns her claim of ineffective assistance, Appellant argued she received ineffective assistance before her plea due to her counsel's failure to investigate her mental health and the possibility she was incompetent to enter her plea. But Appellant did not plead "true" to the State's allegations. She pleaded "not true" to each of them.[15] The mistake apparently stemmed from an error in the written judgment and sentence, which the trial court corrected sua sponte on the same day of the adjudication hearing, and before denying Appellant's motion for new trial.

The only portion of Appellant's motion for new trial that is not premised on her alleged plea of "true," appears to be Appellant's allegation in her motion that even "[a]ssuming [Appellant] was competent to enter her plea of 'true,'" she received ineffective assistance "when defense counsel failed to investigate or present evidence regarding [Appellant's] mental health history as mitigation evidence" at the "short" punishment hearing, which "may have led to a different

---

[15]     Appellant acknowledged in her brief that her trial counsel "entered pleas of 'not true' to the allegations that she violated the terms of her community supervision[.]"

26

sentence." Appellant argues in the summary portion of her appellate brief that although given the opportunity, her counsel "presented *no* evidence at the punishment portion of the adjudication proceeding" and "*any* mitigation evidence presented" could "have had an impact on the trial court's decision" to sentence Appellant to eight years of incarceration.

The Court of Criminal Appeals has cautioned that a criminal defense attorney "must have a firm command of the facts of the case as well as governing law before he can render reasonably effective assistance of counsel." *Caballero*, 2023 WL 2718466 at *11 (quoting *Ex parte Welborn*, 785 S.W.2d 391, 394 (Tex. Crim. App. 1990)). Defense counsel has "a duty to make reasonable investigations or to make a reasonable decision that a particular investigation was unnecessary." *Id.* (citing *Strickland*, 466 U.S. at 691).

The State argues that Appellant does not state in her unsworn declaration (or elsewhere) whether she brought any of the potential mitigation information she mentions in her motion for new trial to the attention of her trial counsel.[16] The

---

[16] Appellant stated in her declaration that she "didn't talk to [her] other lawyer about [her] mental health before [she] did [her] plea." This presumably refers to her first trial counsel. As it concerns her adjudication counsel, Appellant does not state whether she discussed any of her mental health history or diagnoses with him. *See Gutierrez v. State*, 602 S.W.3d 17, 22–23 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (concluding appellant not entitled to relief for ineffective assistance claim based on counsel's failure to investigate case, because although there were "numerous affidavits [attached to the motion for new trial] from persons known or related to appellant who stated that they were not contacted by appellant's trial counsel and they would have testified if asked, there is no affidavit from appellant

27

State further argues Appellant's trial counsel may have had a strategy for not presenting the alleged mitigation evidence, including evidence that Appellant was not taking her prescribed psychotropic medicine before she entered her plea of guilty resulting in her deferred adjudication. The State asserts, "While it is anyone's guess whether hearing counsel was aware of Appellant's conditions and her mismanagement of them, the record before this Court (and before the trial court) suggests that Appellant's mitigation evidence cuts both ways and that her counsel, if aware of this information, rationally could have decided not to present it."

A "failure to uncover and present mitigating evidence cannot be justified as a tactical decision when defense counsel has not conducted a thorough investigation of the defendant's background." *Shanklin v. State*, 190 S.W.3d 154, 164 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A decision by counsel to not conduct a particular investigation is assessed for "reasonableness in all the circumstances." *Caballero*, 2023 WL 2718466 at *11. "Absent affirmative evidence of misconduct, we will not infer ineffective assistance where the record is silent on facts, circumstances, or counsel's rationale unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Brown v. State*, No. 08-12-00026-

or any other witness, such as appellant's wife, stating that they notified appellant's trial counsel of these potential witnesses.").

28

CR, 2014 WL 172521, at *4 (Tex. App.—El Paso Jan. 15, 2014, pet. ref'd) (not designated for publication) (citing *Goodspeed*, 187 S.W.3d at 392). We presume trial counsel's decision not to present mitigating evidence was "rational and strategic" absent evidence establishing counsel failed to conduct due diligence before deciding not to present such evidence. *Id*

Assuming trial counsel was aware of the alleged mitigating evidence, Appellant presented no evidence or explanation as to why her trial counsel failed to present such evidence. *See Beard v. State*, 243 S.W.3d 783, 785 (Tex. App.—Amarillo 2007, pet. ref'd) (holding murder defendant failed to establish that trial counsel rendered ineffective assistance by failing to present defendant's relatives as mitigation witnesses at sentencing hearing in the absence of evidence as to why counsel failed to call witnesses or that mitigating evidence actually existed); *Brown*, 2014 WL 172521, at *4 (holding defendant did not provide evidence to overcome presumption that trial counsel's decision not to present mitigating evidence was "rational and strategic" where defendant did not present evidence from where court could "veer into counsel's decision-making process and provide insight into his rationale"); *cf. Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003) ("[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective.").

The record is silent as to trial counsel's pre-hearing investigation and it is unclear whether Appellant's trial counsel knew about her mental-health history or her previous adjudication of incompetency to stand trial. "A silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. Thus, if the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021) (internal citations omitted); *see also St. Amand v. State*, No. 01-11-00648-CR, 2013 WL 175705, at *5 (Tex. App.—Houston [1st Dist.] Jan. 17, 2013, pet. ref'd) (mem. op., not designated for publication) ("We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, therefore, the appellant must overcome the presumption that the challenged action constituted 'sound trial strategy.'") (citing *Strickland*, 466 U.S. at 689); *Jaime v. State*, No. 01-11-00307-CR, 2012 WL 6754993, at *5 (Tex. App.—Houston [1st Dist.] Dec. 28, 2012, pet. struck) (mem. op., not designated for publication) (observing that when counsel neither testified nor provided affidavit, "[w]ithout more than the arguments made [on appeal] by appellant, we cannot determine whether trial counsel acted in accordance with a reasonable strategy").

Assuming without deciding that Appellant's trial counsel was deficient based on his alleged failure to investigate and present evidence of her mental health history, Appellant is not entitled to relief because she cannot satisfy the prejudice prong of the *Strickland* test.

### b. Prejudice

The *Strickland* prejudice prong "requires that we look to the totality of the circumstances and evidence presented to determine if there is a reasonable probability that, but for Counsel's deficient performance, the result of the proceeding would have been different." *Ex parte Martinez*, 330 S.W.3d 891, 903 (Tex. Crim. App. 2011). Prejudice is established if the probability that the outcome would have been different is "sufficient to undermine confidence in the outcome" of the proceeding. *Strickland*, 466 U.S. at 694.

Appellant argues about trial counsel's failure to present mitigating evidence during the punishment portion of the adjudication proceeding. She states, "*Any mitigation evidence presented by the defense could have had an impact on the trial court's decision. There is a reasonable probability that the outcome of Appellant's proceedings would have been different if adjudication counsel's performance had not been deficient.*" (Emphasis in original.) Appellant argues with respect to prejudice that her trial counsel

> [m]ade no effort to locate mitigation witnesses or investigate possible
> mitigating circumstances. As a result, the trial court had no mitigating

> factors to weigh in Appellant's favor. . . . If adjudication counsel had presented at least some mitigating evidence, there is reasonable probability that the result of the proceeding would have been different.

The State responds that what ultimately matters, and what Appellant failed to establish, is how the proceedings would have been different but for her counsel's alleged deficient performance. We agree.

Appellant does not explain or establish how the result of the adjudication hearing would have been different had the "possible mitigation evidence" been admitted. In asserting she was prejudiced by her counsel's conduct, Appellant relies on *Lopez v. State*, where the appellate court held the defendant was prejudiced by his trial counsel's failure to investigate his background or present mitigating evidence during the punishment phase of his trial. 462 S.W.3d 180, 182 (Tex. App.—Houston [1st Dist.] 2015, no pet.). But unlike the case here, the record in *Lopez* included many examples of trial counsel's failure to perform due diligence and assist with his client's defense. For example, during a hearing on a motion for new trial, Lopez's counsel proffered affidavits from Lopez's girlfriend, who stated trial counsel refused to help prepare Lopez for the sentencing hearing or to meet with Lopez, and from Lopez's mother, who stated trial counsel did not return her calls. *Id.* at 184, 187. Lopez also submitted a letter from his counsel advising him to gather mitigating evidence, such as "good guy" letters, and to

provide it directly to the probation department.[17]  *Id.* at 183.  Lopez gave the trial court a "synopsis of [a] psychosocial interview" conducted by a Harris County Public Defender's Office psychosocial worker and a psychological screening signed by a county psychologist.  *Id.* at 184.  He attached to his motion for new trial a report reflecting a history of mental health issues.  *Id.* at 186.  Unlike the case here, Lopez's trial counsel submitted an affidavit during the sentencing hearing indicating he was unaware of Lopez having "any mental health issues or history."[18]  *Id.*

---

[17]  Lopez's attorney sent him a letter instructing him to gather supportive letters for the presentence investigation report and to forward them to the probation department directly; to bring people with him to the sentencing hearing to testify on his behalf; and to plan to meet with counsel fifteen minutes before the hearing. *Lopez v. State*, 462 S.W.3d 180, 183 (Tex. App.—Houston [1st Dist.] 2015, no pet.).  We observed, "[Trial counsel] gave no indication that he was willing to assist with interviewing potential witnesses or reviewing their statements before they were submitted." *Id.* at 187.  We noted that "[t]he reasonable inferences from counsel's letter are that counsel had assigned to Lopez the task of identifying and contacting potential character witnesses and determining what should, and should not, be included in their character-reference letters—without any assistance from counsel—and that counsel's next involvement in the case would not be until the hearing." *Id.*  We held, "The delegation of the important task of developing mitigation evidence was inconsistent with trial counsel's professional obligation to conduct a reasonable investigation into his client's background and to evaluate whether the information discovered would be helpful in mitigating against the State's evidence on punishment." *Id.* (citations omitted).

[18]  But Lopez's counsel received the presentence investigation report at least ten days before trial, and it "contained information indicating that Lopez had a troubled background, including intellectual deficiencies that impacted his general intelligence, school performance, and decision-making." 462 S.W.3d at 187, 189. Counsel failed to bring even one piece of this information to the trial court's attention. *Id.*

33

There is no such record here. Nor is there any indication of what any "family member affidavits" or "affidavit from trial counsel" would have shown had Appellant proffered them. *See Haley v. State*, No. 01-17-00576-CR, 2018 WL 3233601, at *2 (Tex. App.—Houston [1st Dist.] July 3, 2018, no pet.) (mem. op., not designated for publication) ("There is nothing in the record showing that appellant's trial counsel failed to perform due diligence investigations of potential defense witnesses, or that that there were witnesses available to testify on his behalf at the punishment hearing.") (distinguishing *Lopez*).

Appellant did not identify any mitigation witnesses in her motion for new trial nor did she discuss how the "possible mitigation circumstances" would have led to a different result.[19] Rather, she simply relies on *Lopez*, which states, "When defense counsel presents 'no evidence of mitigating factors . . . to balance against the aggravating factors presented by the State' and fails to do so because he did not

---

[19] Although not discussed in her brief, Appellant attached to her motion a handwritten letter where she states she has two sisters in Houston. Appellant does not say whether they were available to testify, that if asked they would have testified, or what the substance of their testimony would have been. *See Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004) ("To obtain relief on an ineffective assistance of counsel claim based on an uncalled witness, the applicant must show that [the uncalled witness] had been available to testify and that his testimony would have been of some benefit to the defense."); *Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007) (holding it could not conclude attorney was ineffective for failing to call witness when appellant did not show witness was available to testify or that testimony would have been favorable). Proposed witnesses, to meet the availability requirement, "must testify or swear in an affidavit that they were available to testify at the defendant's trial." *Ex parte Sanchez*, 667 S.W.3d 324, 329 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd) (citing *Ex parte Ramirez*, 280 S.W.3d at 853).

investigate mitigating factors or contact potential mitigation witnesses, there is prejudice." *Lopez*, 462 S.W.3d at 189. But as we recently observed, "in evaluating whether Lopez was prejudiced by his counsel's deficient performance, we relied not only on the fact trial counsel had presented no mitigating evidence for the jury to consider, but also on the nature and degree of the aggravating evidence the State presented at punishment and the nature and strength of the omitted mitigating evidence." *Goodin v. State*, No. 01-20-00733-CR, 2022 WL 3650124, at *18 (Tex. App.—Houston [1st Dist.] Aug. 25, 2022, no pet.) (mem. op., not designated for publication). We explained that *Lopez* does not "stand for the proposition that prejudice is established merely by trial counsel's failure to investigate mitigating factors, contact potential mitigation witnesses, or present any mitigating evidence during the punishment phase."[20] *Id.*

And as it concerns Appellant's mental health history and diagnoses, other than arguing her counsel failed to conduct a diligent investigation into these

---

[20] In considering whether Lopez was prejudiced by his trial counsel's deficient performance, "we relied not only on the fact trial counsel had presented no mitigating evidence for the jury to consider, but also on the nature and degree of the aggravating evidence the State presented at punishment and the nature and strength of the omitted mitigating evidence." *Goodin v. State*, No. 01-20-00733-CR, 2022 WL 3650124, at *18 (Tex. App.—Houston [1st Dist.] Aug. 25, 2022, no pet.) (mem. op., not designated for publication). The aggravating evidence proffered by the State in *Lopez* included testimony about the violence used to commit the robbery of which Lopez was accused, indications that he had been involved in other recent robberies, and his criminal history. *Lopez*, 462 S.W.3d at 189. Appellant does not discuss any of these factors in her brief.

matters, Appellant does not explain how, if presented, this evidence would have changed the outcome of the proceedings.[21]  *See Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet ref'd) ("A claim for ineffective assistance based on trial counsel's general failure to investigate the facts of the case fails absent a showing of what the investigation would have revealed that reasonably could have changed the result of the case.") (citing *Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007)).

We thus hold that even if trial counsel was deficient in failing adequately to investigate and put forth evidence of Appellant's mental health history, Appellant has not met her burden to establish she was prejudiced by the alleged deficient performance.

We overrule Appellant's third issue.

### 2. Lack of Hearing

In her first issue, Appellant complains the trial court abused its discretion in failing to grant her a hearing on her motion for new trial.  A claim of "ineffective

---

[21]  We note that Appellant's trial counsel did present a defense during closing arguments in the adjudication hearing.  He argued that Appellant "didn't understand what was going on or what was expected of her as far as the probation was concerned" and that "she probably did not understand that she had to get a deep lung device or an interlock device on her car."  He further stated Appellant did not have "anybody to guide her.  She had nobody to help her be a success on this probation."  *See Gutierrez*, 602 S.W.3d at 23 (holding counsel "would only be found to have rendered ineffective assistance if that failure precluded him from advancing a viable defense").

assistance of counsel may be raised in a motion for new trial." *Smith*, 286 S.W.3d at 340 (quoting *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993)). But a defendant does not have an absolute right to a hearing on a motion for new trial. *Hobbs*, 298 S.W.3d at 199. To be entitled to a hearing on a motion for new trial that alleges ineffective assistance of counsel, a defendant "must allege sufficient facts from which a trial court could reasonably conclude that both *Strickland* prongs have been met." *Gutierrez*, 602 S.W.3d at 22; *see also Smith*, 286 S.W.3d at 340–41 ("Before he will be entitled to a hearing on his motion for new trial alleging ineffective assistance of counsel, a defendant must allege sufficient facts from which a trial court could reasonably conclude *both* that counsel failed to act as a reasonably competent attorney *and* that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different.") (emphasis in original); *Buerger v. State*, 60 S.W.3d 358, 363 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (holding trial court did not abuse discretion in failing to hold hearing on defendant's motion for new trial based on ineffective assistance of counsel because "he failed to explain or demonstrate how [his attorney's] actions, if true, were deficient or how they harmed him").

Even assuming Appellant established the first prong of the *Strickland* test, we have concluded she did not establish prejudice. Thus, she did not establish reasonable grounds showing she could potentially be entitled to relief entitling her

to a hearing on her motion for new trial. We further note that Appellant was sentenced by the trial judge. As such, it is reasonable to assume the judge did not need to hold a hearing on the motion for new trial, during which he presumably would have received the same evidence proffered in the motion:

> When a judge who sentences a defendant also denies the defendant's hearing on a motion for new trial, we presume that the judge knew whether additional testimony produced in affidavits would have influenced his normative sentencing judgment. Only the trial judge could have known what factors he took into consideration when he assessed the punishment, and only he would know how additional testimony might have affected his assessment. The trial judge may conclude, without conducting a hearing, that the appellant suffered no prejudice from any deficiency of the trial counsel with respect to the punishment phase.

*Castaneda v. State*, No. 01-14-00389-CR, 2015 WL 6930466, at *9 (Tex. App.—Houston [1st Dist.] Nov. 10, 2015, pet. ref'd) (mem. op., not designated for publication) (citing *Smith*, 286 S.W.3d at 344–45).

*Smith* is instructive. In *Smith*, the defendant pled guilty pursuant to a plea agreement in connection with a charge of sexual assault. 286 S.W.3d at 336. He was placed on ten years' deferred adjudication community supervision, but eight years later, the State filed a motion to adjudicate. *Id.* After the adjudication hearing, the defendant was sentenced to twenty years in prison. *Id.* The defendant moved for a new trial and requested a hearing based on his counsel's failure to inform him of his right to testify at the adjudication hearing and counsel's failure to submit medical records into evidence. *Id.* The trial court denied the motion for

38

new trial without a hearing. *Id.* at 337. The court of appeals held the trial court abused its discretion in failing to hold a hearing on the claim of ineffective assistance of counsel. *Id.* The State sought review from the Court of Criminal Appeals, arguing the defendant was not entitled to a hearing on his motion for new trial because he had not established there was a reasonable probability the outcome would have been different had a hearing been conducted. *Id.* at 337–38. The defendant argued that he was entitled to a hearing on his motion for new trial because the revocation hearing was essentially a second sentencing hearing and the trial judge should have been allowed to consider any evidence that could have justified a reduced sentence. *Id.* at 344. He argued that the omitted testimony and medical records were material to the trial judge's sentencing for the original offense. *Id.*

The Court of Criminal Appeals held that because the defendant's motion and affidavit did not raise facts to establish he could prevail under the *Strickland* prejudice prong, the court of appeals erred when it held the trial court abused its discretion in failing to hold a hearing on the defendant's motion for new trial. *Id.* at 338. The Court of Criminal Appeals observed that "the decision of what punishment to assess after adjudicating the defendant guilty is a purely normative process, not intrinsically factbound, and is left to the unfettered discretion of the trial judge." *Id.* at 344. The court continued:

Only the trial judge in this case could have known what factors he took into consideration in assessing the original punishment, and only he would know how the defendant's testimony, if allowed, might have affected that assessment. When the trial judge declined to hold a hearing on the appellant's motion for new trial, we presume that he knew from the affidavits what the appellant's testimony at a hearing would be, and that, even assuming any such testimony to be accurate and reliable, knew that it would not have influenced his ultimate normative judgment. In that event, the trial court could have concluded, without the necessity of a hearing, that the appellant suffered no prejudice from any deficiency on his trial counsel's part with respect to the assessment of punishment for the original offense.

*Id*. at 344–45.

Similarly, in *Castaneda*, the defendant complained of the trial court's denial of a hearing on his motion for new trial, in which he claimed ineffective assistance of counsel for failure to provide mitigating evidence during sentencing. 2015 WL 6930466 at *8. The judge who sentenced the defendant was the same judge who signed the presentment of the motion for new trial. *Id.* at *9. Consistent with *Smith*, we held that the "the judge could have determined without a hearing that the alleged deficiencies of trial counsel by failing to provide this evidence at the punishment phase would not have affected his sentencing decision." *Id.* (citing *Smith*, 286 S.W.3d at 344–45).

The State argues that because the trial court sentenced Appellant, it was not necessary for the court "to hold a hearing on the motion for new trial, the only purpose of which would be to receive in a different setting Appellant's claimed mitigation evidence." We agree. As in *Smith* and *Castaneda*, we hold that the trial

40

court judge, who sentenced Appellant, could have determined from the motion and attached evidence what Appellant's testimony at a hearing would have been, and that it would not have influenced his ultimate normative judgment to revisit the evidence submitted in support of her motion for new trial at a hearing. *See Smith*, 286 S.W.3d at 338 (holding that to obtain hearing on motion for new trial, defendant "must at least allege facts that show reasonable grounds to believe that he *could* prevail under *both* prongs" of *Strickland* test) (emphasis in original).

We overrule Appellant's first issue.

## Abandonment of Counsel

In her second issue, Appellant argues she was denied effective assistance of counsel during the thirty-day period for filing a motion for new trial, in violation of her Sixth and Fourteenth Amendment rights. Appellant requests we abate her appeal so that she may file a second, out-of-time motion for new trial. The State responds that Appellant failed to rebut the presumption she was adequately represented by trial counsel following the adjudication of her guilt and further that she has not established harm.

## A. Standard of Review and Applicable Law

The Court of Criminal Appeals has held, "as a matter of federal constitutional law, that the time for filing a motion for new trial is a critical stage of the proceedings, and that a defendant has a constitutional right to counsel during

that period." *Cooks*, 240 S.W.3d at 911. When as here, a defendant is represented by counsel during trial, there is a rebuttable presumption that trial counsel "continued to adequately represent the defendant during this critical [motion-for-new-trial] stage." *Monakino v. State*, 535 S.W.3d 559, 563 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (quoting *Cooks*, 240 S.W.3d at 911).

We thus begin our analysis with the presumption that trial counsel effectively represented Appellant for twenty-eight days following the trial court's adjudication of her guilt until the day he withdrew on April 12, 2021. *See Oldham v. State*, 977 S.W.2d 354, 361 (Tex. Crim. App. 1998) (noting presumption "that counsel was acting effectively at all times"). Appellant may overcome this presumption by producing evidence she was not adequately represented during the relevant time period. *Green v. State*, 264 S.W.3d 63, 69 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). To defeat the presumption, Appellant must show *more than* the fact

> (1) appellant filed a pro se notice of appeal; (2) the appellate attorney was "to be determined"; (3) the trial court appointed appellate counsel after the expiration of the time for filing a motion for new trial; (4) on appeal, appellant would have raised further complaints had a motion for new trial been filed; (5) appellant appeared without counsel when signing a pauper's oath and requesting appellate counsel; and (6) the record shows no activity by trial counsel or any motion to withdraw from the case.

*Id.* (citing *Oldham*, 977 S.W.2d at 362–63). The record must "compel the conclusion that [the defendant] was abandoned by trial counsel." *Id.* at 71. In

42

addition, the defendant must prove that the deprivation of counsel was not "harmless beyond a reasonable doubt." *Cooks*, 240 S.W.3d at 911–12; *see also Monakino*, 535 S.W.3d at 565 ("To establish harm, [the defendant] must present a 'facially plausible claim' that he could have developed in a motion for new trial.") (citing *Cooks*, 240 S.W.3d at 911–12). If a defendant successfully rebuts the presumption and proves harm, the remedy is to abate the proceedings and restart the appellate timetable. *Green*, 264 S.W.3d at 69 (citing *Ward v. State*, 740 S.W.2d 794, 800 (Tex. Crim. App. 1987)).

## B.    Analysis

Appellant argues that her trial counsel failed to advise her of her right to appeal.[22] She argues there is no record of the trial court advising Appellant of her right of appeal and that Appellant did not receive the trial court's certification of her right to appeal until April 13, 2022, one day after her appellate counsel was appointed. Yet, before the trial court appointed her appellate counsel, Appellant timely filed three *pro se* notices of appeal on April 8, 2022, one on a pre-printed form and two handwritten, manifesting Appellant had some knowledge of the appellate process. *See Bearman v. State*, 425 S.W.3d 328, 330 (Tex. App.— Houston [1st Dist.] 2010, no pet.) ("Appellant's filing of a notice of appeal shows

---

[22]    Neither in her motion for new trial nor in her letter and declaration attached to her motion does Appellant claim her counsel failed to advise her of her appellate rights.

that he had knowledge of the appellate process and deadlines.") (citing *Oldham*, 977 S.W.2d at 363); *see also Benson v. State*, 224 S.W.3d 485, 492 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("[T]he filing of the notice of appeal is evidence that the appellant was informed of at least some of his appellate rights.").[23]

Appellant also argues that when her appellate counsel was appointed, a mere two days before her motion for new trial was due, she had limited time to investigate the proceedings and determine whether grounds existed to move for a new trial, and to prepare and file the motion. She argues the limited time "impeded [her] ability to investigate possible grounds for a motion for new trial."

Appellant likens her case to *Monakino v. State*, 535 S.W.3d 559 (Tex. App.—Houston [1st Dist.] 2016, no pet.). In *Monakino*, the defendant pleaded guilty to aggravated assault without an agreed recommendation on punishment from the State. *Id.* at 560. The record contained a certification of Monakino's right to appeal indicating the case was "not a plea bargain case, and [Monakino] has the right to appeal." *Id.* But the written judgment after sentencing included special findings that stated, "Appeal waived. No permission to appeal granted." *Id.* at 561. Monakino filed a handwritten pro se notice of appeal. *Id.* Monakino's trial counsel did not file a motion to withdraw, and the trial court did not appoint

---

[23] *See Burnett v. State*, 959 S.W.2d 652, 659 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) ("The filing of pro se matters does not establish deprivation of counsel, because the practice is commonplace when defendants are represented by counsel.").

appellate counsel. *Id.* at 562. During the next few months, Monakino filed handwritten *pro se* notices of appeal, requesting that he receive an appeal bond and that appellate counsel be appointed. *Id.*

Monakino filed a *pro se* appellate brief in this Court and the State filed a responsive brief. *Id.* We later issued an order noting the certificate of right to appeal in the clerk's record, which indicated Monakino had the right to appeal, was inconsistent with the written judgment of conviction indicating he lacked the right to appeal. *Id.* We abated the case and ordered the trial court to conduct a hearing during which it was to execute an amended certification of the right to appeal that stated whether Monakino had the right to appeal, to determine whether Monakino wanted to pursue his appeal, to determine whether Monakino's trial counsel wanted to continue to represent Monakino on appeal, and to determine whether he was indigent. *Id.* Nearly seven months after the trial court signed the judgment of conviction, Monakino's trial attorney moved to withdraw and the court granted the motion. *Id.* During the hearing ordered by this Court, Monakino insisted he did not waive his right to appeal and that he told his counsel that he would appeal if sentenced to confinement in prison. *Id.* Monakino's trial counsel, the state, and the trial court agreed Monakino did not have the right to appeal, but trial counsel stated that given the verbiage in the certificate of right to appeal, "it might be prudent to allow [Monakino] to appeal whatever issues his appellate counsel might

45

feel are present." *Id.* During a second hearing, the State told the trial court that Monakino had the right to appeal, and Monakino stated he wanted to pursue his appeal and that he was indigent. *Id.* The trial court appointed appellate counsel, who then filed a new appellate brief on Monakino's behalf. *Id.* at 563.

Monakino argued on appeal the trial court erred by failing to appoint appellate counsel within the thirty-day window for filing a motion for new trial. *Id.* He asked this Court to abate the appeal and remand the case to allow him to file an out of time motion for new trial. *Id.* We did so, noting the case did not involve a "conclusory" allegation that counsel was ineffective for failing to investigate and present mitigating evidence. *Id.* at 568. Rather, the presentence investigation report referred to Monakino's substance abuse history and mental health-related hospitalizations, clearly putting counsel on notice of potential mitigating evidence. *Id.*

*Monakino* is distinguishable in several key aspects. Most notably, the appellate counsel in *Monakino* did not move for a new trial, whereas Appellant's appointed counsel filed a timely motion for new trial. Indeed, none of the cases upon which Appellant relies involved a situation like the one present here, where Appellant seeks an abatement to file an amended motion for new trial.[24] *See*

---

[24] The Court of Criminal Appeals has held that a defendant may not file an amended motion for new trial after the thirty-day time limit, even with leave of court. *See Moore v. State*, 225 S.W.3d 556, 558 (Tex. Crim. App. 2007). However, this

*Cooks*, 240 S.W.3d at 908 ("When the time period for filing a motion for new trial expired on November 25, 2004, no motion for new trial had been filed."); *Bearman*, 425 S.W.3d at 330 ("While trial counsel may have made appellant aware of his right to file a motion for new trial, appellant did not have the assistance of counsel in doing so.").

Appellant also relies on *Cooks* in arguing she is entitled to file an out of time amended motion for new trial. She argues appellate courts have granted abatements to allow the filing of an out of time motion for new trial when appellate counsel is appointed after the period for filing a motion for new trial begins "and the shortened time frame harmed appellate counsel's ability to investigate possible grounds for a motion for new trial." Appellant is correct that the appellate court in *Cooks* concluded that the defendant successfully rebutted the presumption that she had been adequately represented by counsel during the motion for new trial period when the defendant brought forth evidence that (1) she was not represented by counsel during the first twenty days following judgment, and (2) the defendant's appellate counsel contended there was insufficient time after she was appointed to assist the defendant adequately in deciding whether to move for a new trial. 240 S.W.3d at 911. What Appellant ignores is that in *Cooks*, the court also held that

prohibition does not "deprive the trial court of the authority to rule on a tardy amendment to a timely motion for new trial, at least absent an objection from the State," within the seventy-five-day limit for ruling on a motion for new trial. *Id.* TEX. R. APP. P. 21.8.

47

the deprivation of counsel was "harmless beyond a reasonable doubt" because Cooks' appellate counsel did not present any "facially plausible claims" that could have been presented in a motion for new trial. *Id*. at 911–12. The same is true here.

While Appellant argues the limited time her appointed appellate counsel had to move for a new trial "impeded [her] ability to investigate possible grounds for a motion for new trial" she does not explain what those possible grounds may have been. *Cooks* is also distinguishable because, as in *Monakino*, no motion for new trial was timely filed.

We believe that *Mashburn v. State*, 272 S.W.3d 1 (Tex. App.—Fort Worth 2008, pet. ref'd) is more analogous to the present situation. In *Mashburn*, a jury found the defendant guilty of murder. *Id.* at 4. Appellant's trial counsel timely filed a notice of appeal and motion for new trial. *Id.* Mashburn claimed he was entitled to abatement of the case so that he could file another motion for new trial, arguing he was without counsel for at least eighteen of the thirty days in which to file a motion for new trial. *Id.* Mashburn argued that the motion for new trial his counsel filed was "inadequate because it was not sworn, contain[ed] no affidavits, and set[ ] forth only general arguments in support of a new trial, such as that a new trial should be granted in the interest of justice." *Id.* He asserted the motion presented nothing for appellate review and was only filed to extend appellate

48

deadlines. *Id.* While the court of appeals observed that Mashburn had received the benefit of appellate counsel only three days before the thirty-day deadline to move for a new trial expired, it concluded Mashburn was not harmed by the "gaps in representation." *Id.* at 5. In holding Mashburn was not entitled to an abatement of his appeal, the court stated, "[Mashburn] does not say what issues he would have raised on appeal that were not preserved by the motion for new trial filed and presented by trial counsel, nor are any of the issues in his brief barred from consideration by this court for lack of them being properly raised in a motion for new trial." *Id.*

Here too, Appellant does not identify what issues not already raised in her original motion she would raise in an amended motion for new trial. Appellant argues that her ability to gather "information in the form of mental health treatment records, family member affidavits, or even an affidavit from trial counsel" was hindered. But there is no indication of who those family members were or what such "family member affidavits" would have shown. We further note that the motion for new trial Appellant filed does address her ineffective assistance of counsel claim and Appellant's competency and mental health history. Appellant has thus not shown she was harmed by any gaps in representation, and there is no basis for abating the appeal to allow the filing of a second motion for new trial. *See Mashburn*, 272 S.W.3d at 5; *see also Mitchell v. State*, No. 01-07-00889-CR,

49

2010 WL 4910227, at *13 (Tex. App.—Houston [1st Dist.] Nov. 30, 2010, pet. ref'd) (mem. op., not designated for publication) ("Conclusory allegations as to trial counsel's ineffectiveness in general ways (such as failing to call a material witness or failing to conduct a proper investigation) are insufficient to establish the necessary evidence or information that counsel would have presented at the motion for new trial that reasonably could have changed the results of the case.") (citing *Cooks*, 240 S.W.3d at 911–12).

To the extent Appellant argues abatement is warranted to allow her more time to develop a record in support of her claims, we previously have declined to grant abatements intended to provide time to "develop the record" for an out of time motion for new trial based on an ineffective assistance of counsel claim, noting such claims can be raised in post-conviction habeas corpus proceedings. *See Porter v. State*, No. 01-17-00534-CR, 2018 WL 4169482, at *9 (Tex. App.— Houston [1st Dist.] Aug. 30, 2018, pet. ref'd) (mem. op., not designated for publication) (holding issues defendant sought to develop for motion for new trial "can be properly raised in a post-conviction writ of habeas corpus") (citing *Pettway v. State*, 4 S.W.3d 390, 391 (Tex. App.—Houston [1st Dist.] 1999, order) (holding defendant did not show good cause to suspend appellate rules to allow him to file out-of-time motion for new trial because ineffectiveness claim could be raised in post-conviction habeas corpus proceeding); *see also Rylander*, 101

50

S.W.3d at 110 (explaining that "an application for a writ of *habeas corpus* is the more appropriate vehicle to raise ineffective assistance of counsel claims").

We overrule Appellant's second issue.

## Competency

In her fourth issue, Appellant argues the trial court abused its discretion in failing to conduct an informal competency hearing "upon the suggestion of incompetence in Appellant's motion for new trial."

## A.    Standard of Review and Applicable Law

A defendant has the right to be competent throughout the entire trial, including sentencing. *Rodriguez v. State*, 329 S.W.3d 74, 78 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Casey v. State*, 924 S.W.2d 946, 949 (Tex. Crim. App. 1996)); *Garay v. State*, No. 01-11-00595-CR, 2012 WL 2159296, at *2 (Tex. App.—Houston [1st Dist.] June 14, 2012, no pet.) (mem. op., not designated for publication).   There are two steps to a trial court's competency determination. "The first step is an informal inquiry; the second step is a formal competency trial." *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018).   Generally, an inquiry into the defendant's competency "must be conducted when there is evidence 'sufficient to raise a *bona fide* doubt in the mind of the judge whether the defendant is legally competent.'" *Gonzales v. State*, 313 S.W.3d 840, 841 (Tex.

Crim. App. 2010) (emphasis in original) (quoting *Montoya v. State*, 291 S.W.3d 420, 424 (Tex. Crim. App. 2009)).

A trial court's failure to conduct a competency inquiry is reviewed for abuse of discretion. *Hobbs v. State*, 359 S.W.3d 919, 924 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Montoya*, 291 S.W.3d at 425); *Lewis v. State*, 532 S.W.3d 423, 432 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). The reviewing court gives "great deference" to the trial court's assessment of the defendant's "ability to assist counsel and his understanding of the proceedings." *Lewis*, 532 S.W.3d at 432 (citing *McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003)).

Evidence that suggests the need for an informal competency inquiry may be based on observations made with respect to one or more of the factors set forth in Code of Criminal Procedure Article 46B.024, or on any other indication that the defendant is incompetent under Article 46B.003. *See* TEX. CODE CRIM. PROC. arts. 46B.004(c–1), 46B.024; *see also Laflash v. State*, 614 S.W.3d 427, 432 (Tex. App.—Houston [1st Dist.] 2020, no pet.). The Article 46B.024 factors include the capacity of the defendant during criminal proceedings to (1) rationally understand the charges against him and the potential consequences of the pending criminal proceedings, (2) disclose to defense counsel pertinent facts, events, and states of mind, (3) engage in a reasoned choice of legal strategies and options, (4)

52

understand the adversarial nature of criminal proceedings, (5) exhibit appropriate courtroom behavior, and (6) testify. TEX. CODE CRIM. PROC. art. 46B.024(1)(A)–(F); *see also Laflash*, 614 S.W.3d at 432.

"Texas' competency statutes[25] allow competency to be raised, by either party or the judge, at any time before sentence is pronounced." *Morris v. State*, 301 S.W.3d 281, 290 (Tex. Crim. App. 2009) (citing TEX. CODE CRIM. PROC. arts. 46B.004(a) and 46B.005(d)) (footnote added). "Sentencing closes the door on the trial because it is the final action at the trial stage[.]" *Casey*, 924 S.W.2d at 949. "[W]hen determining if the trial court should have had a bona fide doubt as to competency, we do not typically consider evidence brought to the trial court's attention for the first time after sentencing." *Garay*, 2012 WL 2159296, at *2 (citing *Rodriguez*, 329 S.W.3d at 78). "Simply put, the Texas competency statute does not apply after sentencing." *Rodriguez*, 329 S.W.3d at 79 (citing *Morris*, 301 S.W.3d at 290).

Competency may be raised for the first time in a motion for new trial. *Edwards v. State*, 993 S.W.2d 171, 175–76 (Tex. App.—El Paso 1999, pet. ref'd).

---

[25] Texas Code of Criminal Procedure article 46B.004(a) states in part: "Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. art. 46B.004(a). Texas Code of Criminal Procedure article 46B.005(d) states: "If the issue of the defendant's incompetency to stand trial is raised after the trial on the merits begins, the court may determine the issue at any time before the sentence is pronounced." TEX. CODE CRIM PROC. art. 46B.005(d).

But the "bona fide doubt" standard does not apply when competency evidence is first presented in a defendant's motion for new trial. *See Purchase v. State*, 84 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding court should not apply bona fide doubt standard when all evidence of incompetency was first presented at hearing on motion for new trial). When competency is first raised in a motion for new trial, the court "applies the normal standard used in deciding a motion for new trial under which the trial court considers all the evidence presented, judges the credibility of witnesses, and resolves conflicts in the evidence." *Id.* (citing *Edwards*, 993 S.W.2d at 175–76; *see also Godoy v. State*, 122 S.W.3d 315, 320 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) ("[A] defendant may challenge his competency to stand trial in a motion for new trial on a plea of true to a motion to revoke community supervision. When the competency issue is raised in this manner, the trial court applies the traditional standard to determine whether to grant a motion for new trial.") (citations omitted). The trial court has "broad discretion" to judge the witnesses' credibility and to weigh the evidence "to determine whether a different result would occur upon retrial." *Godoy*, 122 S.W.3d at 320 (citing *Dusenberry v. State*, 915 S.W.2d 947, 949–50 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd)); *cf. Brown*, 960 S.W.2d at 778 ("[T]o evaluate an appellant's claim that the trial court erroneously denied his

motion for new trial, we consider all of the competency evidence presented at the motion for new trial hearing.").

## B. Analysis

We note that Appellant relies on cases in which competency was raised before sentencing. They are thus inapposite. *See Boyett*, 545 S.W.3d at 558 (motion raising issue of defendant's competency was filed on third day of guilt/innocence phase of trial); *Kapperman v. State*, No. 01-20-00127-CR, 2022 WL 3970081, at *31 (Tex. App.—Houston [1st Dist.] Sept. 1, 2022, no pet.) (mem. op., not designated for publication) (incompetency first suggested by counsel's statements during voir dire); *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999) (competency first raised in pretrial hearing on motion to suppress evidence); *Laflash*, 614 S.W.3d at 433 (competency raised during motion to adjudicate guilt); *Fluellen v. State*, 443 S.W.3d 365, 369 (Tex. App.—Texarkana 2014, no pet.) (noting defendant's assertion that competency was raised by his actions during "course of the proceedings," beginning with pretrial hearing).

Appellant relies primarily on *Laflash*, in which we held the trial court abused its discretion by failing to conduct an informal inquiry into Laflash's competency to stand trial during a hearing on a motion to adjudicate guilt. 614 S.W.3d at 428. Laflash's counsel moved for a competency evaluation to determine whether Laflash was competent to stand trial for indecency with a child by sexual contact

and the trial court granted the motion, appointing Dr. Barry Norman to perform the evaluation. *Id.* at 428-29. Dr. Norman's report stated, among other things, that Laflash had the capacity to "disclose facts, events and state of mind associated with the alleged offense," appeared to have an "adequate understanding" of the charges against him and could provide "details about history," and "appear[ed] competent to assist defense counsel." *Id.* at 429. Dr. Norman also stated that although Laflash did not understand the various pleas or the implication of accepting a plea bargain, his responses "were not suggestive of mental illness." *Id.*

Laflash pleaded guilty and signed a "declaration of understanding regarding his competency to stand trial and waiver of rights." *Id.* at 430. He affirmed during the plea proceedings that he understood the guilty plea memorandum, which his counsel read to him, and that by pleading guilty, he was "voluntarily giving up a lot of valuable rights" including the right to a jury trial and to testify in his own defense. *Id.* The trial court entered an order of deferred adjudication, placing Laflash on community supervision for eight years. *Id.* About four months later, the State moved to proceed with an adjudication of guilt. *Id.* The trial court held a hearing on the State's motion and took judicial notice of all contents of the court's file and the case's prior proceedings. *Id.* Laflash pleaded "not true" to one allegation and "true" to the remaining allegations regarding his violation of the terms of his community supervision. *Id.* Laflash's probation officer and father

56

testified about his mental status at the hearing. *Id.* The probation officer testified that Laflash was "mentally challenged" and struggled with some of the rules he had to comply with because of his low IQ. *Id.* at 430–31. Laflash's father testified that his son "get[s] confused very often" and needs to have some things explained repeatedly. *Id.* at 431. The trial court adjudicated Laflash guilty of the charge of indecency with a child and sentenced him to eighteen years' imprisonment. *Id.*

This Court concluded that based on the evidence presented at the hearing on the motion to adjudicate, the trial court should have conducted an informal inquiry to evaluate Laflash's competency to stand trial. *Id.* at 433. We stated that the testimony of Laflash's father and probation officer during the adjudication hearing "provided the court with recent and specific testimony . . . regarding the degree of [Laflash's] impairment resulting from his intellectual disability." *Id.* We held that because the amount of information necessary to trigger an informal inquiry is "low and can be satisfied with a suggestion from any credible source that a defendant may be incompetent," the trial court abused its discretion in failing to conduct an informal inquiry "to determine whether there was some evidence from any source that would support a finding that [Laflash] was incompetent to stand trial." *Id.*

Appellant's reliance on *Laflash* is misplaced. Evidence of Laflash's incompetency was introduced before sentencing was complete and there was testimony during the adjudication hearing regarding the "degree of [Laflash's]

57

impairment resulting from his intellectual disability." In contrast, evidence of Appellant's alleged incompetency was first raised in Appellant's motion for new trial, and there was no live or affidavit testimony by any witness during the adjudication hearing concerning Appellant's purported incompetency or mental health history or diagnoses.

We find our sister court's opinion in *Rodriguez v. State*, 329 S.W.3d 74 (Tex. App.—Houston [14th Dist.] 2010, no pet.) to be illustrative. The defendant in *Rodriguez* was convicted of murder and after sentencing, his appellate counsel moved to appoint an expert to evaluate the defendant's competency and a motion for new trial alleging the defendant had been incompetent to stand trial and received ineffective assistance of counsel. *Id.* at 76–77. The court of appeals explained it did not "typically consider evidence brought to the trial court's attention for the first time after sentencing" and would, rather, "consider only the facts known to the trial court prior to the imposition of appellant's sentence." *Id.* at 78–79. The defendant argued that four facts should have created a bona fide doubt as to his competency before sentencing: (1) the defendant received a head injury from a beating the night of the crime; (2) the defendant was confined in the part of the jail where people were housed for "disciplinary, protective, or medical reasons"; (3) the defendant had epilepsy; and (4) the defendant drank alcohol regularly before his arrest. *Id.* at 79. The court disagreed, stating, "These facts do

not show recent severe mental illness, moderate retardation, or truly bizarre acts. Nor do these facts suggest that [the defendant] might have been unable to consult with his attorney or understand the proceedings. [The defendant] offered no explanation for why the court might think otherwise." *Id.* The court of appeals held the trial court did not abuse its discretion by failing to hold an informal inquiry into the defendant's competency. *Id.* at 80.

The court then turned to the defendant's motion for new trial, which raised the issue of his competency, and applied the abuse of discretion standard used to review a denial of a motion for new trial. *Id.* (citing *Criswell v. State*, 278 S.W.3d 455, 457 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). During the hearing on the motion for new trial, the defendant raised several additional facts, including his memory problems, and the fact that the defendant's trial counsel "initially had concerns about [his] competency." *Id.* The appellate court held the "minor memory problems, without supporting evidence that these problems caused him to be denied a fair trial," and "an unsupported allegation of incompetence, such as trial counsel's initial comment," did not show lack of competency and, thus, the trial court did not abuse its discretion by denying the motion for new trial. *Id.* The court also noted it had "found no support for the argument that a defendant may have an expert appointed after sentencing." *Id.* at 81 (citing *Bronson v. State*, No.

12–09–00129–CR, 2010 WL 702259, at *4 (Tex. App.—Tyler Feb. 26, 2010, no pet.) (mem. op., not designated for publication)).[26]

Appellant concedes that her appellate counsel first "raised the suggestion that Appellant was not competent during her adjudication proceedings in a motion for new trial." The competency statutes do not provide a mechanism for appointing an expert to determine competency after sentencing. Further, there is no requirement that a trial court conduct a competency hearing after sentencing. *See Freeman v. State*, No. 13–98–587–CR, 2001 WL 34401233, at *2 (Tex. App.—Corpus Christi-Edinburg Aug. 16, 2001) (mem. op., not designated for publication) (holding court did not err in failing to hold competency inquiry when only evidence of incompetency was brought to court's attention in defendant's motion for new trial and bill of exception), *rev'd on other grounds*, 125 S.W.3d 505 (Tex. Crim. App. 2003).

Appellant argues that her declaration in support of her motion for new trial "call[ed] into question her ability to 'rationally understand the charges against [her]' and to 'disclose to counsel pertinent facts, events, and states of mind.'" She

---

[26] In *Bronson v. State*, the Tyler Court of Appeals stated, "Article 46B.005 is prospective in nature, allowing the trial court to order an examination to determine whether the 'defendant is incompetent to stand trial.' The statute does not specifically provide for an examination to determine if a convicted person had been incompetent to stand trial[.]" No. 12–09–00129–CR, 2010 WL 702259, at *4 (Tex. App.—Tyler Feb. 26, 2010, no pet.) (mem. op., not designated for publication) (citing TEX. CODE CRIM. PROC. art. 46B.005(d)).

60

states that the exhibits supporting her motion for new trial demonstrate she suffers from mental illness and previously was found incompetent to stand trial by the judge of the 180th Judicial District Court of Harris County.[27] Appellant also states that her conduct at the hearing on the motion to adjudicate "further calls into question her competency to proceed." For example, she responded to her counsel's questions during the hearing with "no comment" and attempted to invoke the Fifth Amendment in an attempt to avoid the State's questions, even though the trial court advised her that she waived her right to plead the Fifth Amendment when she voluntarily took the stand.

We are not persuaded that Appellant's attempt to plead the Fifth Amendment or her refusal to answer her counsel's questions reflect incompetency. As the State notes, Appellant's attempt to plead the Fifth and her refusal to answer her counsel's questions both occurred after she had already started testifying and

[27] The evidence attached to the motion for new trial included (1) a declaration from Appellant in which she stated that her court-appointed attorney was "unaware of and unprepared for" the motion on her hearing to adjudicate guilt; that she "signed under duress" and "was rushed into signing a document when [she] still had questions/concerns. . . ."; (2) records reflecting her mental hospital history, current medications, and diagnoses; (3) a July 13, 2011 order granting both parties' Motion for Psychiatric Examination in Cause No. 1294211, *State of Texas v. Denise Rodriguez*, in the 180th District Court of Harris County, Texas; (4) the State's July 12, 2011 Motion for Psychiatric Examination in that same case; (5) a June 7, 2012 Order for Restoration of Competency in Cause No. 129421101010, *State of Texas v. Denise Rodriguez*, in the 351st District Court of Harris County, Texas; (6) Appellant's declaration in which she states that she "didn't want to plead 'true'" and that she "tried to take the 5th [Amendment], but [she] didn't want to get more time"; and (7) information about risperidone, the drug Appellant claims she was taking.

61

answered questions during the adjudication hearing. A defendant's refusal to communicate with counsel or the trial court does not overcome the presumption of competence. *George v. State*, 446 S.W.3d 490, 501 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *see generally Lewis*, 532 S.W.3d at 433 ("The trial court could reasonably have concluded that appellant's refusal to cooperate at trial was not fueled by a lack of rational understanding, but rather a desire to obstruct the trial proceeding. The record indicates that appellant understood the nature of the proceeding and was capable of consulting with his appointed attorney to a rational degree of understanding. He simply chose not to do so."); *George*, 446 S.W.3d at 501 ("[D]isruptive courtroom conduct and a general failure to cooperate are not probative of incompetence to stand trial.")*; Freeman*, 2001 WL 34401233 at *2 ("What was before the trial court were examples of a defendant who wanted to speak and argue during the trial. The conduct of the appellant before the trial court was not so bizarre as to suggest that she lacked the necessary competency to stand trial."); *Kapperman*, 2022 WL 3970081, at *31 ("Inappropriate outbursts and comments during trial are not necessarily evidence of one's incompetency to stand trial.").[28]

---

[28] *See also Hill v. State*, No. 2-06-094-CR, 2007 WL 866476, at *8 (Tex. App.—Fort Worth Mar. 22, 2007, pet. ref'd) (mem. op., not designated for publication) (holding trial court did not abuse discretion by denying motion for new trial based on competency). In *Hill*, the appellate court observed that the defendant

The trial court's observation of Appellant during the motion to adjudicate hearing is given "great deference" on appeal insofar as competency is concerned. *George*, 446 S.W.3d at 500 (citing *Ross v. State*, 133 S.W.3d 618, 627 (Tex. Crim. App. 2004)). And there is no evidence in the record, beyond Appellant pleading the Fifth, that would have suggested to the court that Appellant did not understand the proceedings.

Nor does Appellant's diagnosis of bipolar disorder or prior mental health history show in and of itself that she was incompetent. As we recently held in *Kapperman*, a "defendant's mental illness does not amount to a suggestion of incompetency unless there is also evidence he cannot rationally understand the proceedings against him or engage rationally with counsel in the pursuit of his own best interest."[29] 2022 WL 3970081, at *32; *see also McDaniel*, 98 S.W.3d at 712

---

presented nothing more at the new trial hearing than his own testimony that he was incompetent at the time of trial because of some drugs that he took. [The defendant] essentially testified that he was unable to assist his attorney and lacked a rational and factual understanding of the proceedings against him, stating that he did not recall changing his plea to guilty, that he "couldn't have been aware of nothing that was going on with [him]," and that he basically had no recollection of anything after taking the drugs.

*Id.*

[29] While Appellant states in her brief that she was found incompetent to stand trial by the judge of the 180th Judicial District Court of Harris County, there is nothing attached to her motion that evidences this fact. Among the exhibits attached to her motion for new trial is a July 13, 2011 order granting a Motion for Psychiatric Examination in Cause No. 1294211, *State of Texas v. Denise Rodriguez*, in the 180th District Court of Harris County, Texas, but no other document is attached

(holding that evidence that defendant's "history of mental illness" including bipolar disorder did not obligate trial court to make informal inquiry into defendant's competency); *Lindsey v. State*, 544 S.W.3d 14, 25–26 (Tex. App.— Houston [14th Dist.] 2018, pet. ref'd) ("Evidence that appellant had been diagnosed with bipolar disorder, that appellant was not taking medication, and that appellant was not 'the same' as he was while taking his medication did not suggest appellant was incompetent because there was no evidence of a present impairment and the record did not contain any evidence that any mental illness prevented appellant from rationally understanding the proceedings or pursuing his best interests."); *Ceasar v. State*, No. 01-07-00769-CR, 2008 WL 2611927, at *3 (Tex. App.—Houston [1st Dist.] July 3, 2008, no pet.) (mem. op., not designated for publication) (holding trial court did not abuse discretion in denying new trial on competency grounds although defendant's medical records and affidavit from defendant's psychiatrist stated that several months before defendant's arrest, he was diagnosed with bipolar disorder and post-traumatic stress disorder and

---

indicating the results of such examination. We are not persuaded that this action taken by a trial court ten years prior to the adjudication hearing in an unrelated matter indicated to the trial court that Appellant may have been incompetent. We note that also attached to Appellant's motion for new trial is a June 7, 2012 Order for Restoration of Competency in Cause No. 129421101010, *State of Texas v. Denise Rodriguez*, in the 351st District Court of Harris County, Texas, stating "It is therefore ORDERED by the Court that the above named defendant is at this time mentally competent, as found by the Court, and that he stand trial another day."

prescribed medication, and defendant's affidavit stated he was not on the proper medication during his plea and thought he would receive probation); *Martinez v. State*, No. 05-01-01770-CR, 2003 WL 21509039, at *2 (Tex. App.—Dallas June 30, 2003, no pet.) (mem. op., not designated for publication) ("[E]ven assuming they were 'recent,' prior hospitalizations, treatment for depression, or a determination that a person is mentally ill do not per se constitute a finding that the person is incompetent to stand trial.").

We hold the trial court's decision not to conduct an informal inquiry into appellant's competency was not an abuse of discretion. We overrule Appellant's fourth issue.

## Conclusion

We affirm the trial court's judgment.


Veronica Rivas-Molloy
Justice


Panel consists of Justices Hightower, Rivas-Molloy, and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).